SYLLABUS

(This syllabus is not part of the opinion of the Court.  It has been prepared by the Office of the Clerk for the convenience of the reader.  It has been neither reviewed nor approved by the Supreme Court.  Please note that, in the interest of brevity, portions of any opinion may not have been summarized.)

**Tahir Zaman v. Barbara Felton** (A-60-12) (072128)

**Argued March 18, 2014 -- Decided September 9, 2014**

**PATTERSON, J., writing for a unanimous Court.**

This appeal requires the Court to analyze an agreement for the sale of a residential property and a subsequent lease and repurchase agreement, and to determine whether the transactions collectively gave rise to an equitable mortgage, violated consumer protection statutes, or contravened this Court's decision in In re Opinion No. 26 of the Committee on the Unauthorized Practice of Law, 139 N.J. 323 (1995) (In re Opinion No. 26).

In 2007, defendant Barbara Felton, an experienced buyer and seller of real estate, faced imminent foreclosure proceedings with respect to her unfinished home when she defaulted on a $105,000 construction mortgage.  Felton was aware that no certificate of occupancy was issued with respect to the house, and the house was uninhabitable.  A mutual acquaintance, Joseph Richardson, introduced Felton to Tahir Zaman, a licensed real estate agent.  On June 16, 2007, Felton, Zaman, and Richardson met at the property to discuss its potential sale. Zaman was unaware that the house lacked a certificate of occupancy and was uninhabitable.  Felton requested a price of $250,000 for the property, and Zaman made a $200,000 counteroffer.  Felton wanted to keep the property. Zaman told Felton that if she accepted his offer of $200,000, he would agree to a buy-back option and would allow her to remain on the property as a tenant.  Felton and Zaman then executed a written land sale agreement with a purchase price of $200,000, and Richardson signed the agreement as a witness.  The agreement provided that each party had the right to arrange for an attorney to review its terms within three days of its execution, that either party could cancel the sale during the attorney-review period, and that the agreement would be binding at the conclusion of that period.  The agreement contained no reference to a buy-back or lease provision.

On June 23, 2007, at a closing in which neither party was represented by counsel, Felton and Zaman entered into two separate agreements:  a lease agreement under which Felton agreed to pay $1,000 per month in rent, and an agreement that gave Felton the option to repurchase the property within three months for $237,000.  Felton signed the deed, an affidavit of title, and the buy-back agreement.  The parties did not execute any mortgage documents.  Zaman gave Felton a cashier's check in the amount of $85,960, the balance after mortgage payoff and other closing expenses.  Neither party exercised the right to cancel the agreement during the three-day attorney review period.  On July 19, 2007, Zaman recorded the deed to the disputed property.  For the next seventeen months, Felton occupied the property, but did not pay rent in accordance with the lease agreement, or exercise her contractual right to repurchase the property.

In December 2008**,** Zaman filed the underlying complaint, claiming that he was the purchaser in an enforceable land sale agreement.  Felton filed a counterclaim based on fraud, slander of title, violations of the Consumer Fraud Act (CFA), violations of the Fair Foreclosure Act (FFA), N.J.S.A. 2A:50-53 to -68, and violations of the federal Truth in Lending Act (TILA), 15 U.S.C.A. §§ 1601 - 1667.  Felton claimed that the parties' transactions collectively comprised an equitable mortgage and that the transactions were voidable by virtue of an alleged violation of this Court's opinion in In re Opinion No. 26.  The trial court elected to hold a bifurcated trial.  It assigned to the jury the following questions:  whether Zaman had proven by a preponderance of the evidence that Felton knowingly agreed to sell the property to him, and if not, whether Felton had proven by clear and convincing evidence that Zaman obtained his deed to the property by "fraudulent actions."  The jury concluded that Zaman had proven by a preponderance of the evidence that Felton knowingly agreed to sell her property to him.  The trial court then conducted the trial's second phase, in which the trial judge was the factfinder.  After hearing additional testimony, the trial court dismissed all of Felton's remaining claims, including her contention that the transactions gave rise to an equitable mortgage and her allegation premised upon In re Opinion No. 26.

Felton appealed, and the Appellate Division affirmed.  Citing the jury's determination that the property was

1

knowingly sold, the panel concluded that the trial court correctly declined to find an equitable mortgage or a valid claim under the CFA. In addition, the panel affirmed the trial court's determination that In re Opinion No. 26 does not govern this case. The Supreme Court granted Felton's petition for certification. 213 N.J. 537 (2013).

**HELD**: The Court affirms the jury's determination that Felton knowingly sold her property to Zaman. It reverses the portion of the Appellate Division's opinion that affirmed the trial court's dismissal of Felton's claim that the parties' agreements gave rise to an equitable mortgage. The Court remands to the trial court for application of the eight-factor standard for the determination of an equitable mortgage set forth by the United States Bankruptcy Court in O'Brien v. Cleveland, 423 B.R. 477, 491 (Bankr. D.N.J. 2010) and, in the event that the trial court concludes that an equitable mortgage was created by the parties, for the adjudication of two of Felton's statutory claims based on alleged violations of consumer lending laws, as well as several other claims not adjudicated by the trial court. The Court concurs with the trial court and Appellate Division that Felton has no claim under the Consumer Fraud Act, that this case does not implicate In re Opinion No. 26, and that Felton's remaining claims were properly dismissed.

1. The Court reviews the jury's determination – that Zaman had proven by a preponderance of the evidence that Felton knowingly agreed to sell the property to him – in accordance with a deferential standard. An appellate court should not disturb the findings of the jury merely because it would have found otherwise upon review of the same evidence. Carrino v. Novotny, 78 N.J. 355, 360 (1979). Applying that standard, the Court affirms the Appellate Division panel's determination insofar as it affirmed the jury's determination that Zaman had proven by a preponderance of the evidence that Felton knowingly conveyed her property to him. (pp. 15-18)

2. "New Jersey courts have repeatedly found that sale-leaseback arrangements made to avoid foreclosure are in fact equitable mortgages." Johnson v. NovaStar Mortg., Inc., 698 F. Supp. 2d 463, 469 (D.N.J. 2010). It is the trial court's task to discern whether the transaction has been labeled as a land sale in order to mask its actual objective: a mortgage loan secured by a deed to the property at issue. In O'Brien v. Cleveland, 423 B.R. 477 (Bankr. D.N.J. 2010), the Bankruptcy Court identified eight factors to assist trial judges in determining whether a given transaction gives rise to an equitable mortgage. Under the O'Brien framework, the court considers not only the form of the transaction itself but circumstances that can motivate a party to disguise a mortgage secured by a property as a sale of land and indications that both parties intend the seller to retain the land notwithstanding the purported sale. The Court adopts the O'Brien factors as a comprehensive and practical standard to guide trial courts as they determine whether a particular transaction, or series of transactions, gives rise to an equitable mortgage, and remands the matter to permit the trial court to apply the O'Brien test. (pp. 18-24)

3. In In re Opinion No. 26, supra, this Court considered whether real estate brokers commit the unauthorized practice of law when they conduct residential real estate transactions in which the "sellers and buyers are . . . unrepresented by counsel." Id. at 326. The risk that the Court addressed in In re Opinion No. 26 – that a real estate broker acting in his or her own interest will promote the completion of a real estate transaction to the detriment of the seller, the buyer, or both – is not raised in the circumstances of this case. Nothing in the trial record suggests that Zaman purported to provide legal advice to Felton, or that Felton was somehow led to believe that Zaman was her advocate. Accordingly, the Court concurs with the trial court and the Appellate Division that In re Opinion No. 26 is irrelevant to this case, that Zaman did not violate the principles of that decision, and that the trial court properly declined to void the parties' transactions on that ground. (pp. 25-28)

4. The trial court properly dismissed Felton's Consumer Fraud Act (CFA) claim; the trial court should consider the merits of Felton's Fair Foreclosure Act (FFA) claim if it determines on remand that the parties' agreements gave rise to an equitable mortgage; and, with the exception of her claim under 15 U.S.C.A. § 1639(h), governed by a three-year statute of limitations, Felton's federal Truth in Lending Act (TILA) claims were properly dismissed as time-barred. On remand, the trial court should ascertain whether any of the remaining claims were raised before it, and if so, whether such a claim gives rise to a cognizable cause of action in the circumstances of this case. Finally, Felton's claim under the Foreclosure Rescue Fraud Prevention Act (FRFPA), not raised before the trial court, was properly dismissed by the Appellate Division. (pp. 28-36)

The judgment of the Appellate Division is **AFFIRMED IN PART** and **REVERSED IN PART**, and the matter is **REMANDED** to the trial court for proceedings consistent with the Court's opinion.

**CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, and FERNANDEZ-VINA; and**

2

**JUDGES RODRÍGUEZ and CUFF (both temporarily assigned) join in JUSTICE PATTERSON's opinion.**

TAHIR ZAMAN,

     Plaintiff-Respondent,

         v.

BARBARA FELTON and MR.
FELTON, her husband,

     Defendants-Appellants.


     Argued March 18, 2014 – Decided September 9, 2014

     On certification to the Superior Court,
     Appellate Division.

     Robert B. Silverman argued the cause for
     appellants.

     I. Dominic Simeone argued the cause for
     respondent (Simeone & Raynor, attorneys; Mr.
     Simeone and Kelly A. Barse, on the briefs).

     David G. McMillin argued the cause for
     amicus curiae Legal Services of New Jersey
     (Melville D. Miller, Jr., President
     attorney; Mr. McMillin and Mr. Miller, on
     the brief).

     Barry S. Goodman argued the cause for amicus
     curiae New Jersey Association of Realtors
     (Greenbaum, Rowe, Smith and Davis,
     attorneys; Mr. Goodman and Steven B. Gladis,
     on the brief).

    JUSTICE PATTERSON delivered the opinion of the Court.

    This appeal requires the Court to analyze an agreement for

the sale of a residential property and a subsequent lease and

repurchase agreement, and to determine whether the transactions collectively gave rise to an equitable mortgage, violated consumer protection statutes, or contravened this Court's decision in In re Opinion No. 26 of the Committee on the Unauthorized Practice of Law, 139 N.J. 323 (1995).

In 2007, defendant Barbara Felton faced foreclosure proceedings with respect to her unfinished, uninhabitable home and the land on which it was situated. Felton and plaintiff Tahir Zaman, a licensed real estate agent, entered into a written contract for the sale of the property. A week later, at a closing in which neither party was represented by counsel, Felton and Zaman entered into two separate agreements: a lease agreement under which Felton became the lessee of the property, and an agreement that gave her the option to repurchase the property from Zaman at a substantially higher price than the price for which she sold it. For more than a year, Felton remained on the property, paying no rent. She did not exercise her right to repurchase.

Zaman filed this action, claiming that he was the purchaser in an enforceable land sale agreement, and that he therefore was entitled to exclusive possession of the property and to damages. Felton asserted numerous counterclaims, alleging fraud, slander of title, violations of the Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -195, and violations of other federal and state

2

consumer protection statutes.  She claimed that the parties'
transactions collectively comprised an equitable mortgage and
constituted a foreclosure scam, entitling her to relief under
several theories.  She further contended that the transactions
were voidable by virtue of an alleged violation of this Court's
opinion in In re Opinion No. 26.

A jury rendered a verdict in Zaman's favor with respect to
the question of whether Felton knowingly sold her property to
him.  The trial court subsequently conducted a bench trial and
rejected Felton's remaining claims, including her contention
that the transactions gave rise to an equitable mortgage and her
allegation premised upon In re Opinion No. 26.  An Appellate
Division panel affirmed the trial court's judgment.

We affirm in part and reverse in part the Appellate
Division's determination.  We affirm, as adequately supported by
the evidence presented at trial, the jury's determination that
Felton knowingly sold her property to Zaman.  We reverse the
portion of the Appellate Division's opinion that affirmed the
trial court's dismissal of Felton's claim that the parties'
agreements constituted a single transaction that gave rise to an
equitable mortgage.  We adopt the eight-factor standard for the
determination of an equitable mortgage set forth by the United
States Bankruptcy Court in O'Brien v. Cleveland, 423 B.R. 477,
491 (Bankr. D.N.J. 2010).  We remand to the trial court for

3

application of that standard to this case, and, in the event that the trial court concludes that an equitable mortgage was created by the parties, for the adjudication of two of Felton's statutory claims based on alleged violations of consumer lending laws, as well as several other claims not adjudicated by the trial court. We concur with the trial court and Appellate Division that Felton has no claim under the CFA, that this case does not implicate In re Opinion No. 26, and that Felton's remaining claims were properly dismissed.

I.

The trial record reveals the following information about the transactions in dispute in this case.

By 2007, Felton was an experienced buyer and seller of real estate, who had participated in prior land sales and financing transactions that involved significant sums of money. In July 1976, Felton purchased the property at issue in this case, consisting of approximately fifteen acres of land in Plumsted Township, and commenced construction of a residence on the property. According to the testimony of a municipal construction and zoning official, due to structural defects and building code violations of which Felton was aware, no certificate of occupancy was issued with respect to the house, and the house was uninhabitable. As of 2007, a construction mortgage in the amount of $105,000 obtained by Felton was in

4

default, and Felton confronted the imminent foreclosure of her unfinished home.

In 2007, Zaman worked primarily as a medical imaging technologist. He conducted a "side business" in which he would purchase distressed residential properties, primarily from sheriffs' sales, and rehabilitate and sell the homes. Zaman held a real estate license, which he used primarily to avoid paying real estate commissions on his purchases and sales. In ten years as a licensed real estate broker, Zaman acted as a broker for other parties' transactions on only two occasions.

Felton was introduced to Zaman by a mutual acquaintance, Joseph Richardson. According to Zaman, during an initial telephone call conducted by Zaman, Felton, and Richardson, Zaman told Felton that his business was to purchase properties, not to provide mortgages. Zaman disclosed to Felton that he had a real estate license.

On June 16, 2007, Felton, Zaman, and Richardson met at the Plumsted Township property to discuss its potential sale. Zaman inspected the property, but was unaware that the house lacked a certificate of occupancy and was uninhabitable. Felton requested a price of $250,000 for the property, and Zaman made a $200,000 counteroffer. According to the testimony of Zaman, Felton said that she wanted to keep the property. In response, Zaman told Felton that if she accepted his offer of $200,000, he

5

would agree to a buy-back option and would allow her to remain on the property as a tenant.

During the June 16, 2007 meeting, Felton and Zaman executed a written land sale agreement, and Richardson signed the agreement as a witness. The agreement, a standard form obtained by Zaman from the real estate office with which he was associated, identified Zaman as the buyer and Felton as the seller. It described the location of the property and set forth a sale price of $200,000. The agreement provided that each party had the right to arrange for an attorney to review its terms within three days of its execution, that either party could cancel the sale during the attorney-review period, and that the agreement would be binding at the conclusion of that period. On its last page, the land sale agreement warned the buyer and seller about the risks of proceeding without an attorney, the benefits of retaining an attorney, and the conflicting interests of the broker and title company with respect to a real estate sale. The agreement contained no reference to a buy-back or lease provision.

The closing took place on June 23, 2007, accelerated from a later date because of Felton's concern that her property would be sold at a sheriff's sale. Felton had not arranged for a deed

6

to be prepared prior to closing. She accepted Zaman's offer to have a deed prepared by a local attorney at Felton's expense.[1]

On the day of the closing, Felton and Zaman executed documents in two stages.[2] First, at a Bordentown diner, they signed the lease and a seller's residency certification, which were not notarized. After a brief dispute over the terms of the lease and buy-back agreements, Felton and Zaman agreed that Felton would pay Zaman $1,000 per month in rent. They also agreed that Felton would have an option to repurchase her property within three months for $237,000, which according to Zaman, would have been extended to one year had Felton requested an extension.

Later, at the local branch of a bank, Felton signed the deed, an affidavit of title, and the buy-back agreement.[3] Zaman gave Felton a cashier's check in the amount of $85,960, which was calculated by subtracting from the $200,000 purchase price the amount that Zaman needed to pay off the existing mortgage,

_____

[1] It is unclear whether the attorney contacted by Zaman spoke with Felton before preparing the deed on her behalf.
[2] The record contains no evidence that Zaman learned before closing, or within a reasonable time thereafter, that the property was uninhabitable.
[3] There was conflicting testimony at trial about the execution of the documents. Felton testified that she was shown only the signature pages of the documents that she signed. However, the attending notary testified that his practice is to verify that each individual who signs a document in his presence understands the terms of that document and has not been coerced into signing the document.

7

satisfy outstanding property tax obligations, and pay other expenses related to the sale. Zaman also paid Richardson $5,000, which was characterized at trial as a finder's fee. The parties did not execute any mortgage documents.

At trial, Zaman maintained that he did not offer a mortgage to Felton, and that he has never offered a mortgage to anyone. Felton, in contrast, testified that she understood the parties' transaction to be a mortgage. By Felton's account, she thought that Zaman was loaning her $200,000. She also construed the $85,960 check issued to her to be the down payment on the loan, and understood that she would satisfy the terms of the mortgage loan if she paid Zaman $237,000 within three months of closing. Felton admitted that she never inquired about the interest rate applied to the purported mortgage, and that the parties never discussed any such interest rate.

Neither party exercised the right to cancel the agreement during the three-day attorney review period. However, one week after closing, while he was visiting the bank that held the existing construction loan, Zaman learned that Felton had told the bank that her transaction with Zaman was a "fraudulent deal," and that she had urged the bank to reject any payment made by Zaman. The mortgagee bank initially refused to suspend foreclosure proceedings, but reversed its position after Zaman filed suit to compel it to accept his payment and to cancel the

8

mortgage. Felton also attempted to rescind the sale agreement by sending a check in the amount of $85,983.65 to Zaman, but Zaman refused to cash the check. On July 19, 2007, Zaman recorded the deed to the disputed property.

For the next seventeen months, Felton continued to occupy the property. She did not pay rent in accordance with the lease agreement, or exercise her contractual right to repurchase the property.

## II.

In December 2008, Zaman filed a complaint against Felton in the Law Division. In the complaint, filed pursuant to N.J.S.A. 2A:35-1 to -2, Zaman sought possession of real property and damages derived from Felton's allegedly illegal use and occupancy of the property.[4] Felton filed a counterclaim, asserting claims based on fraud, slander of title, violations of the CFA, violations of the Fair Foreclosure Act (FFA), N.J.S.A. 2A:50-53 to -68, and violations of the federal Truth in Lending Act (TILA), 15 U.S.C.A. §§ 1601 - 1667.

As requested by Felton, and by agreement of the parties, the trial court elected to hold a bifurcated trial. It assigned to the jury only the issue of fraud and reserved the remaining issues for a subsequent bench trial. After five trial days, the

---

[4] Felton's husband, who died in 1991, was also named as a defendant.

9

jury was charged to determine the following questions: whether Zaman had proven by a preponderance of the evidence that Felton knowingly agreed to sell the property to him, and if not, whether Felton had proven by clear and convincing evidence that Zaman obtained his deed to the property by "fraudulent actions." The trial court instructed the jury that if it answered the first question in the affirmative, it should not reach the second question, and that both questions called for "yes or no" answers. By a vote of six to one, the jury concluded that Zaman had proven by a preponderance of the evidence that Felton knowingly agreed to sell her property to him, thus disposing of the only issue presented in the first phase of the bifurcated trial. Felton filed a motion for a new trial under Rule 4:49-1, which the trial court denied.

The trial court then conducted the trial's second phase, in which the trial judge was the factfinder. After hearing additional testimony during a single trial day, the trial court dismissed all of Felton's remaining claims. First, the trial court rejected Felton's contention that the parties' agreement was invalid because Zaman had failed to state in the contract that he held a real estate license. Second, the trial court rejected Felton's argument premised upon In re Opinion No. 26. The court concluded that the three-day attorney review period

10

and right of rescission had adequately protected Felton, who chose not to retain counsel or rescind the contract.

Third, the trial court rejected Felton's contention that her contract with Zaman was an unconscionable product of "grossly disproportionate bargaining power," given Felton's experience with prior real estate transactions and her awareness that the transaction to which she agreed constituted the sale of her property.  Finally, the trial court held that no equitable mortgage was created by the parties' agreements.  In that regard, the trial court cited the jury's finding that Felton intended to sell her property, as well as evidence that Felton understood that a sale of her property was her only alternative to foreclosure.  The court held that the subsequent lease and buy-back provisions were separate agreements that were intended to protect the seller after closing and permit her to remain on the property, and that those agreements were not components of the original sale.  The trial court characterized the case as an example of "[s]eller's remorse," and ruled that despite Felton's equitable mortgage claim, the parties did not agree upon a loan secured by a deed of title.  In light of that finding, the trial court did not reach Felton's remaining arguments and dismissed her counterclaims.

Felton appealed, and an Appellate Division panel affirmed. The panel dismissed Felton's argument that the trial court's

11

jury instruction incorrectly framed the issue of whether there was a knowing sale of the property. It rejected, on hearsay grounds, Felton's contention that she should have been permitted to testify about a previous appraisal of her property. Citing the jury's determination that the property was knowingly sold, the panel concluded that the trial court correctly declined to find an equitable mortgage or a valid claim under the CFA. Finally, the panel affirmed the trial court's determination that In re Opinion No. 26 does not govern this case.

We granted Felton's petition for certification. 213 N.J. 537 (2013). We also granted the motions of Legal Services of New Jersey (LSNJ) and New Jersey Association of Realtors (NJAR) to appear as amici curiae.

### III.

Felton contends that she entered into a transaction that operated as an equitable mortgage and that she was the victim of a fraudulent mortgage scheme. Felton challenges the jury verdict that she knowingly entered into an agreement to sell her property, and that Zaman did not commit a fraud. She contends that the jury verdict does not preclude the court from concluding that the parties' agreements constituted a single transaction that gave rise to an equitable mortgage. Felton argues that the Appellate Division panel misapplied this Court's opinion in In re Opinion No. 26, and that the parties'

12

agreements should be held void because Zaman violated the principles of that decision. Felton claims that the trial court and Appellate Division improperly failed to enforce the CFA, the FFA, the TILA, the Foreclosure Rescue Fraud Prevention Act (FRFPA), N.J.S.A. 46:10B-53 to -68, N.J.S.A. 45:15-17(k) and (q), which authorize the New Jersey Real Estate Commission to sanction real estate brokers for certain acts in real estate transactions, and N.J.S.A. 2C:21-19, New Jersey's criminal usury law.

Zaman characterizes the parties' transactions as a negotiated agreement for the sale of property with subsequent agreements that did not create an equitable mortgage. In support of that contention, Zaman cites the jury's finding that Felton intended to sell her land, Felton's inability to make the low monthly payments on her construction loan, the sequential rather than simultaneous execution of the parties' agreements, Felton's experience in real estate transactions, her failure to object to any contract provisions, and the parties' equivalent bargaining power. Zaman contends that if the factors set forth in O'Brien, supra, 423 B.R. at 491, apply, those factors weigh against a finding of an equitable mortgage in this case. Zaman argues that In re Opinion No. 26 does not govern the parties' transaction because he acted as a private investor, not a real estate broker, in the closing at issue, and that the contract

13

provided sufficient protection for both parties in its provision authorizing a three-day period of attorney review. Zaman argues that the CFA does not govern his conduct with respect to this transaction because he was not a seller, but a consumer, because he committed no unlawful practice within the meaning of N.J.S.A. 56:8-2, and because it was he, not Felton, who was defrauded in this case when he was induced to purchase an uninhabitable residence. He contends that the FRFPA does not apply because no claim based upon this statute was made before the trial court, that the FFA is irrelevant because no foreclosure proceedings were instituted, that the TILA does not govern this case because there was no mortgage and any TILA claims asserted are time-barred, and that Felton's remaining claims are meritless or time-barred.

Amicus curiae LSNJ urges the Court to apply the factors of O'Brien, supra, 423 B.R. at 491, and to rule that the parties' transaction created an equitable mortgage that violated the CFA and triggered an obligation on Zaman's part to comply with the FFA. LSNJ asserts that the trial court and Appellate Division sanctioned contractual chicanery that undermines the CFA, the equitable mortgage doctrine, and the FRFPA. LSNJ contends that Zaman failed to meet the standards of his profession as a real estate broker, in violation of In re Opinion No. 26, and that this gave rise to a separate violation of the CFA.

14

Amicus curiae NJAR urges the Court not to expand the reach of In re Opinion No. 26 to incorporate the transaction in dispute. NJAR argues that Zaman's real estate license was tangential to his role in this case given that he extracted no commission or fee and the real estate office with which he was affiliated had no role in this dispute. NJAR contends that In re Opinion No. 26 should not govern transactions merely where one of the parties has a real estate license because in such a setting, the individual with a real estate license is not providing the other party with assistance that could be mistaken for legal advice. NJAR further argues that the CFA should not govern the parties' agreements because Zaman acted as a private individual, not as a seller to consumers or a commercial lender.

IV.

A.

We begin our review of this bifurcated case by considering Felton's challenge to the verdict rendered by the jury following the first phase of the trial. At Felton's request, the trial court submitted only a limited issue to the jury: whether the parties' agreement constituted a fraudulent transfer.[5] The jury responded in the affirmative to a single question: whether

---

[5] This limitation was sought by Felton's attorney, who requested prior to trial that the trial court "limit the request for a jury trial to the issues raised by the Fourth Separate Defense (Fraud) and the first count of the Counterclaim (Fraud)."

15

Zaman had proven by a preponderance of the evidence that Felton knowingly agreed to sell the property to him.[6]  Felton contends on appeal that the jury's verdict was against the weight of the evidence.

We review the jury's determination in accordance with a deferential standard.  "A jury verdict is entitled to considerable deference and 'should not be overthrown except upon the basis of a carefully reasoned and factually supported (and articulated) determination, after canvassing the record and weighing the evidence, that the continued viability of the judgment would constitute a manifest denial of justice.'"  Risko v. Thompson Muller Auto. Grp., Inc., 206 N.J. 506, 521 (2011) (quoting Baxter v. Fairmont Food Co., 74 N.J. 588, 597-98 (1977)).  A trial court should overturn a jury verdict and grant a new trial "only where to do otherwise would result in a miscarriage of justice shocking to the conscience of the court." Ibid. (internal quotation marks omitted).  A reviewing court will not reverse a trial court's denial of a motion for a new

---

[6] Although it appears that Felton preserved her right to challenge the jury verdict on appeal, the record with respect to her applications following the verdict is incomplete.  The Appellate Division opinion referred to a motion for a judgment notwithstanding the verdict, filed by Felton pursuant to Rule 4:40-2, but no such motion appears in the record before this Court.  The record contains a notice of motion for a new trial filed pursuant to Rule 4:49-1.  Because of the deficiencies in the record, it is unclear what arguments were made by Felton in support of either motion.

trial "unless it clearly appears that there was a miscarriage of justice under the law." R. 2:10-1; accord Risko, supra, 206 N.J. at 522. An appellate court should not disturb the findings of the jury merely because it would have found otherwise upon review of the same evidence. Carrino v. Novotny, 78 N.J. 355, 360 (1979).

Applying that deferential standard, we reject Felton's challenge to the jury verdict. There was more than sufficient evidence in the trial record to support the jury's determination that Zaman proved by a preponderance of the evidence that Felton knowingly agreed to sell her property to him. On June 16, 2007, Felton and Zaman executed a written land sale agreement, entitled "Contract for Sale of a One-to-Four Family Residential Property." The agreement described the location of the property and the negotiated sale price of $200,000. Moreover, the property was encumbered with a construction mortgage on which Felton owed approximately $105,000 to the mortgagee bank. Felton was not able to pay the loan as it came due and was facing foreclosure. She understood the sale of the property to be her only means of evading foreclosure. At the June 23, 2007 closing, Zaman took possession of the deed to the property. Zaman also provided Felton with a cashier's check for $85,960, representing the difference between the purchase price and the amount needed to pay off the mortgage, back taxes, and other

expenses associated with the sale.  In short, the jury heard ample evidence that Felton was fully informed about the nature of the agreements that she signed, and that she knowingly executed an agreement to sell her property.

Accordingly, we affirm the Appellate Division panel's determination insofar as it affirmed the jury's determination that Zaman had proven by a preponderance of the evidence that Felton knowingly conveyed her property to him.

B.

We next review the trial court's factual findings in the second phase of the bifurcated trial, in which the trial judge acted as the factfinder on all issues other than the single issue considered by the jury.  Our inquiry on appeal is limited to whether there is "substantial, credible evidence to support the court's findings."  In re Civil Commitment of J.M.B., 197 N.J. 563, 597, cert. denied, 558 U.S. 999, 130 S. Ct. 509, 175 L. Ed. 2d 361 (2009); see also State v. Johnson, 42 N.J. 146, 162 (1964) ("The aim of the review at the outset is . . . to determine whether the findings made could reasonably have been reached on sufficient credible evidence present in the record.").  Accordingly, deference is given "to the trial court's factual findings . . . 'when supported by adequate, substantial and credible evidence.'"  Toll Bros., Inc. v. Twp. of W. Windsor, 173 N.J. 502, 549 (2002) (quoting Rova Farms

18

Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 484 (1974)). This is especially the case when those findings "are substantially influenced by [the judge's] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." Johnson, supra, 42 N.J. at 161.

In contrast, the trial court's conclusions of law are reviewed de novo. "A trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995). "It is a well-established principle of appellate review that a reviewing court is neither bound by, nor required to defer to, the legal conclusions of a trial or intermediate appellate court." State v. Gandhi, 201 N.J. 161, 176 (2010).

We first consider the trial court's rejection of Felton's claim that the parties entered into an equitable mortgage. Felton claims that although her initial agreement with Zaman was structured as a sale, the parties' agreements should be construed as a single transaction, which was effectively a high interest loan secured by the deed to her property.

The doctrine of equitable mortgages "is founded upon that cardinal maxim in equity which regards as done that which has been agreed to be, and ought to have been, done." Rutherford

19

Nat'l Bank v. H.R. Bogle & Co., 114 N.J. Eq. 571, 573-74 (N.J. Ch. 1933); see also Humble Oil & Ref. Co. v. Doerr, 123 N.J. Super. 530, 551 (Ch. Div. 1973) (stating that in recognizing equitable mortgage, "[i]t is clear that equity looks to substance rather than to form, and that a guarantor or surety who takes property or an interest therein as security for his guaranty is a mortgagee thereof in equity"). As an Appellate Division panel observed,

> "[i]f a transaction resolves itself into a security, whatever may be its form and whatever name the parties may choose to give it, it is, in equity, a mortgage. If a deed or contract, lacking the characteristics of a common law mortgage, is used for the purpose of pledging real property, or some interest therein, as security for a debt or obligation, and with the intention that it shall have effect as a mortgage, equity will give effect to the intention of the parties. Such is an equitable mortgage."
>
> [Welsh v. Griffith-Prideaux, Inc., 60 N.J. Super. 199, 208 (App. Div. 1960) (quoting J.W. Pierson Co. v. Freeman, 113 N.J. Eq. 268, 270-71 (E. & A. 1933)).]

Courts apply principles of equity to "look beyond the plain terms" of an agreement between the parties, and thereby determine whether the agreement is in effect a mortgage. Johnson v. NovaStar Mortg., Inc., 698 F. Supp. 2d 463, 468 (D.N.J. 2010). In that inquiry, the court focuses on the characteristics of the transaction at its inception:

20

> The doctrine has been firmly established from an early day that when the character of a mortgage has attached at the commencement of the transaction, so that the instrument, whatever be its form, is regarded in equity as a mortgage, that character of mortgage must and will always continue. If the instrument is in its essence a mortgage, the parties cannot by any stipulations, however express and positive, render it anything but a mortgage, or deprive it of the essential attributes belonging to a mortgage in equity.
>
> [Humble Oil, supra, 123 N.J. Super. at 544-45.]

Ordinarily, the conveyance of a property accompanied or followed by a leaseback transaction is precisely what it purports to be: a sale in which the parties separately agree that the seller will become the tenant, and the buyer will become the landlord, in accordance with the terms of a lease. However, "New Jersey courts have repeatedly found that sale-leaseback arrangements made to avoid foreclosure are in fact equitable mortgages." Johnson, supra, 698 F. Supp. 2d at 469; see also James Talcott, Inc. v. Roto Am. Corp., 123 N.J. Super. 183, 202 (Ch. Div. 1973) (noting that "[t]here are numerous authorities for the proposition that an absolute conveyance intended as security for an obligation will be treated as a mortgage"). It is the trial court's task to discern whether the transaction has been labeled as a land sale in order to mask its

21

actual objective: a mortgage loan secured by a deed to the property at issue.

In Johnson, supra, the United States District Court for the District of New Jersey adopted a standard articulated by the United States Bankruptcy Court for the District of New Jersey in O'Brien, supra, 423 B.R. at 491. 698 F. Supp. 2d at 469-70. In O'Brien, supra, the Bankruptcy Court scrutinized a residential sale that was conducted under the threat of imminent foreclosure, in which the parties agreed that the seller would remain in his home and buy the home back from the buyer in a series of payments over time. 423 B.R. at 483-86. It identified eight factors to assist trial judges in determining whether a given transaction gives rise to an equitable mortgage:

> [(1)] Statements by the homeowner or representations by the purchaser indicating an intention that the homeowner continue ownership; [(2)] A substantial disparity between the value received by the homeowner and the actual value of the property; [(3)] Existence of an option to repurchase; [(4)] The homeowner's continued possession of the property; [(5)] The homeowner's continuing duty to bear ownership responsibilities, such as paying real estate taxes or performing property maintenance; [(6)] Disparity in bargaining power and sophistication, including the homeowner's lack of representation by counsel; [(7)] Evidence showing an irregular purchase process, including the fact that the property was not listed for sale or that the parties did not conduct an appraisal or investigate title; [(8)] Financial distress of the homeowner, including the imminence of

22

> foreclosure and prior unsuccessful attempts
> to obtain loans.

[Id. at 491.]

Under the O'Brien framework, the court considers not only the form of the transaction itself but circumstances that can motivate a party to disguise a mortgage secured by a property as a sale of land and indications that both parties intend the seller to retain the land notwithstanding the purported sale. We concur with the District Court that the eight factors set forth in O'Brien are "useful and consistent with New Jersey equitable mortgage jurisprudence." Johnson, supra, 698 F. Supp. 2d at 470. We adopt the O'Brien factors as a comprehensive and practical standard to guide trial courts as they determine whether a particular transaction, or series of transactions, gives rise to an equitable mortgage.

We remand the matter to permit the trial court to make findings addressing each of the eight factors that comprise the O'Brien test. Because the parties presented extensive evidence at trial regarding Felton's financial situation, the parties' respective experiences with land sale transactions, their negotiations, their statements about their intent to enter into the transactions, the terms of each agreement, and the conduct of each party following closing, the trial court's findings on

23

remand may be based upon the existing record, without the need for further testimony.

We note that in ruling that the parties' transactions did not give rise to an equitable mortgage, the trial court relied in part on the jury's determination that Felton intended to sell her property, and the absence of any indication in the parties' agreements that they contemplated a mortgage loan. Consistent with the limitation of its inquiry to the issue of fraud, the jury was not instructed on the question of whether the parties intended to create an equitable mortgage. The jury's determination that Felton knowingly sold her property does not itself resolve the question of whether the parties created an equitable mortgage. Its finding that Zaman had proven by a preponderance of the evidence that Felton knowingly entered into a land sale may, however, be relevant to one or more of the O'Brien factors in the trial court's inquiry on remand. Other considerations cited by the trial court, such as the imminent foreclosure proceedings, Felton's inability to obtain a new mortgage or meet her obligations under her existing loan, and Felton's failure to exercise her right of repurchase, may also be relevant to the trial court's application of the O'Brien factors on remand.

C.

Affirming the determination of the trial court, the Appellate Division panel rejected Felton's claim that Zaman violated the rule set forth by this Court in In re Opinion No. 26, supra, 139 N.J. 323. We concur with the Appellate Division's analysis.

In In re Opinion No. 26, this Court considered whether real estate brokers commit the unauthorized practice of law when they conduct residential real estate transactions in which the "sellers and buyers are . . . unrepresented by counsel." Id. at 326. The Court analyzed the risks posed to an uncounseled residential real estate buyer or seller when a real estate broker, whose commission is contingent on the successful completion of the transaction, conducts the closing. Id. at 334-35. The Court noted the potential conflict between the interests of the broker, who may choose the attorney who drafts the deed, and the interests of the seller, who may be under the mistaken impression that he or she is receiving independent legal advice from counsel selected by the broker. Id. at 336-37. The Court noted that the buyer is similarly unprotected by legal advice in an uncounseled closing. Id. at 337. It observed that "[t]he buyer may not know if the description of the property is precisely that assumed to be the subject of the purchase," may be unaware of whether "the title described in the contract is that with which he would be satisfied," may

25

misunderstand the seller's obligations and may lack "fair comprehension of whether all of the possible and practical concerns of [the] buyer have been addressed by the contract." Id. at 335.

The Court held that although it has the authority to prohibit residential real estate closings conducted without the assistance of counsel, "the public interest does not require such a prohibition." Id. at 326. Instead, it determined that if residential buyers and sellers "are informed of the true interests of the broker and title officer, sometimes in conflict with their own interests, and of the risks of not having their own attorney, [they] should be allowed to proceed without counsel." Ibid.

To that end, the Court prescribed conditions under which "those participating in such transactions shall not be deemed guilty of the unauthorized practice of law." Ibid. It required that both sellers and buyers be informed in writing by the real estate broker about the benefits of seeking the advice of counsel, the risks associated with proceeding unrepresented, and the "conflicting interests of brokers and title companies in these matters." Id. at 357-59, 362-63. Pending recommendations from the Civil Practice Committee on "practical methods for achieving those aims," the Court mandated a written notice "attached to the proposed contract of sale as its cover page,"

26

supplemental to the notice required to appear on the first page of the contract, advising the parties that the contract will be binding within three business days, that an attorney for either party may review its terms, and that the agreement may be cancelled within the attorney review period. Id. at 357-58, 362-63. As drafted on an interim basis by the Court, that notice provided that the real estate broker represented the seller and not the buyer, that the title company represented neither party, that it is in the broker's financial interest that the house be sold and the closing completed, that the broker is neither permitted nor qualified to provide legal advice, and that there are significant risks to foregoing the assistance of counsel. Id. at 362-63.

The risk that the Court addressed in In re Opinion No. 26 -- that a real estate broker acting in his or her own interest will promote the completion of a real estate transaction to the detriment of the seller, the buyer, or both -- is not raised in the circumstances of this case. The Court's concern in In re Opinion No. 26 was "unlearned and unskilled" legal advice. Id. at 341 (internal quotation marks omitted). Its remedy was premised on a real estate broker's authority to "guide, control and handle" a transaction involving unrepresented parties, who may erroneously believe that they are being advised by counsel. Id. at 326.

27

Here, in contrast to the setting addressed by the Court in In re Opinion No. 26, Zaman acted not in his professional capacity as a broker seeking to promote a successful closing but on his own behalf as the property's buyer. Nothing in the trial record suggests that Zaman purported to provide legal advice to Felton, or that Felton was somehow led to believe that Zaman was her advocate. Given the parties' relationship and Felton's experience in real estate transactions, the record reveals no cause for concern that Zaman's statements to Felton could have been misconstrued as the advice of her lawyer. The fact that Zaman holds a real estate license does not deprive him of the right to participate in a transaction on his own behalf, or convert his activities in that regard to the unauthorized practice of law. See In re Baker, 8 N.J. 321, 346 (1951) (Case, J., dissenting).

Accordingly, we concur with the trial court and the Appellate Division that In re Opinion No. 26 is irrelevant to this case, that Zaman did not violate the principles of that decision, and that the trial court properly declined to void the parties' transactions on that ground.

D.

Finally, we review the trial court's dismissal of Felton's remaining statutory claims.

28

In her counterclaim, Felton asserted a CFA claim premised upon Zaman's alleged fraud in connection with the sale or advertisement of real estate, in violation of N.J.S.A. 56:8-2. To prevail on a CFA claim, a plaintiff must establish three elements:  "1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss." Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 557 (2009); see also Int'l Union of Operating Eng'rs Local No. 68 Welfare Fund v. Merck & Co., 192 N.J. 372, 389 (2007).  N.J.S.A. 56:8-2 defines an "unlawful practice" to include

> any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby.

For purposes of determining whether the first element -- the existence of an unlawful practice -- is established, the CFA "defines 'sale' to include 'any sale, rental or distribution, offer for sale, rental or distribution or attempt directly or indirectly to sell, rent or distribute.'"  D'Agostino v. Maldonado, 216 N.J. 168, 186 (2013) (quoting N.J.S.A. 56:8-

1(e)). "Advertisement" is defined to denote "the attempt . . . to induce directly or indirectly any person to enter or not enter into any obligation to acquire any title or interest in any merchandise or to increase the consumption thereof or to make any loan." N.J.S.A. 56:8-1(a). As a component of the definition of "merchandise" in N.J.S.A. 56:8-1(c), "services" offered to the public may involve an unlawful practice for purposes of the CFA. See Lemelledo v. Beneficial Mgmt. Corp. of Am., 150 N.J. 255, 265 (1997) (holding that sale and provision of consumer credit constitutes "merchandise" under N.J.S.A. 56:8-1(c)); Quigley v. Esquire Deposition Serv., LLC, 400 N.J. Super. 494, 505-06 (App. Div. 2008) (recognizing shorthand reporting services and sale of deposition transcripts as "merchandise" under CFA).

Notwithstanding these broad definitions, New Jersey appellate courts have adopted "a limited construction of the [CFA]'s applicability to real estate transactions." 539 Absecon Blvd., L.L.C. v. Shan Enters. Ltd., 406 N.J. Super. 242, 274 (App. Div. 2009). Consistent with the CFA's limitation to "fraudulent, deceptive or other similar kind of selling or advertising practices," Daaleman v. Elizabethtown Gas Co., 77 N.J. 267, 271 (1978), our courts have declined to impose the CFA remedies upon the non-professional, casual seller of real estate, see Strawn v. Canuso, 140 N.J. 43, 59 (1995) (limiting

30

"holding to professional sellers of residential housing (persons engaged in the business of building or developing residential housing) and the brokers representing them"); Byrne v. Weichert Realtors, 290 N.J. Super. 126, 134 (App. Div.) ("The provision does not apply, however, to non-professional sellers of real estate, i.e. to the homeowner who sells a house in the normal course of events."), certif. denied, 147 N.J. 259 (1996). Indeed, this Court has never applied the CFA against a non-professional, who does not advertise real estate services to the public, based upon his or her purchase of residential real estate for personal use or as an investment.

In D'Agostino, supra, the Court held that a foreclosure rescue scheme that was advertised to the public and involved the payment of a fee gave rise to a cognizable claim under the CFA. 216 N.J. at 186-88. The circumstances of this case differ significantly from those of D'Agostino. There, the plaintiffs were prompted to contact the defendant about a foreclosure rescue after seeing an advertisement of the defendant's real estate services on his vehicle. Id. at 176, 187. Moreover, the defendant in D'Agostino demanded and collected a fee for his real estate services. Id. at 187-88. By virtue of the five separate agreements that the defendant prepared for the plaintiff's signature, the defendant obtained the plaintiff's

31

property, valued at $480,000, for $10 -- a result never contemplated by the plaintiff.  Id. at 177, 190.

In contrast, Zaman did not advertise real estate services to the public, initiate contact with Felton, or demand a fee for real estate services.  There is no evidence that Zaman represented himself to the public as a source of mortgage loans, or that Felton was deceived with respect to the terms or consequences of the parties' agreements.  The considerations that prompted this Court to recognize a CFA claim in D'Agostino are not presented by this case.

Accordingly, regardless of whether the trial court determines on remand that the parties' transactions created an equitable mortgage, we hold that the record does not support a finding that Zaman committed an "unconscionable commercial practice" within the meaning of N.J.S.A. 56:8-2.  Accordingly, the trial court properly dismissed Felton's CFA claim.

Felton's FFA claim, premised upon a contention that Zaman's action for possession of the property was not accompanied by the "notice of intention to take action" mandated by N.J.S.A. 2A:50-56, is contingent upon a finding that the parties' transactions gave rise to an equitable mortgage.  N.J.S.A. 2A:50-56 mandates that, prior to taking any "legal action to take possession of [a] residential property which is the subject of [a] mortgage, [a] residential mortgage lender [must] give the residential

32

mortgage debtor notice of such intention at least 30 days in advance of such action." Accordingly, if the trial court determines on remand that there was no equitable mortgage in this case, it need not further consider Felton's FFA claim. If it determines that the parties' agreements gave rise to an equitable mortgage, the trial court should consider the merits of Felton's FFA claim.

With the exception of one claim, we agree with the trial court and Appellate Division that Felton's TILA claims were properly dismissed as time-barred. Pursuant to 15 U.S.C.A. § 1640, a TILA action

> may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation . . . . Any action under this section with respect to any violation of [15 U.S.C.A. § 1639, 1639b, or 1639c] may be brought in any United States district court, or in any other court of competent jurisdiction, before the end of the 3-year period beginning on the date of the occurrence of the violation.

> [15 U.S.C.A. § 1640(e) (emphasis added).]

"The violation 'occurs' when the transaction is consummated. Nondisclosure is not a continuing violation for purposes of the statute of limitations." In re Smith, 737 F.2d 1549, 1552 (11th Cir. 1984) (internal citation omitted). "The credit transaction is consummated when 'a contractual

33

relationship is created between [a creditor and consumer].'" *Williams v. Countrywide Home Loans, Inc.*, 504 F. Supp. 2d 176, 186 (S.D. Tex. 2007) (alteration in original) (quoting *Bourgeois v. Haynes Constr. Co.*, 728 F.2d 719, 720 (5th Cir. 1984)), aff'd, 269 F. App'x 523 (5th Cir. 2008).

Here, the last of the transactions giving rise to Felton's TILA allegation occurred on June 23, 2007. Even if the claims set forth in Felton's amended counterclaim relate back to prior pleadings in accordance with Rule 4:7-1, most of her TILA claims are barred by the one-year statute of limitations prescribed by 15 U.S.C.A. § 1640(e).

One of Felton's TILA allegations, her claim that Zaman engaged "in a pattern and practice of extending credit to consumers under mortgages . . . based on the consumers' collateral without regard to the consumers' repayment ability" in violation of 15 U.S.C.A. § 1639(h), is not governed by the one-year statute of limitations, but by a three-year statute of limitations. 15 U.S.C.A. § 1640(e). Accordingly, Felton's claim based on that provision was timely filed. If the trial court determines on remand that no equitable mortgage was created in this case, Felton's claim under 15 U.S.C.A. § 1639(h), predicated on an alleged extension of credit in connection with a mortgage, fails as a matter of law. If, however, the trial court finds on remand that the parties

34

created an equitable mortgage, it should determine the merits of Felton's claim under 15 U.S.C.A. § 1639(h).

We briefly address Felton's remaining claims. On appeal, Felton asserts four claims that were not pled in her original or amended counterclaim: first, that Zaman violated New Jersey's criminal usury statute, N.J.S.A. 2C:21-19(a); second, that he violated N.J.S.A. 45:15-17(k), for paying compensation or commission to a person who does not possess a real estate license; third, that he violated N.J.S.A. 45:15-17(q), for failing to disclose his status as a real estate agent, and fourth, that the terms of the parties' agreement were unconscionable pursuant to the Appellate Division's holding in Howard v. Diolosa, 241 N.J. Super. 222 (App. Div.), certif. denied, 122 N.J. 414 (1990). The record does not indicate whether Felton properly raised these claims before the trial court. Neither the trial court nor the Appellate Division addressed the merits of those claims. Accordingly, on remand, the trial court should ascertain whether any of those four claims were raised before it, and if so, whether such a claim gives rise to a cognizable cause of action in the circumstances of this case.[7]

_____

[7] If the trial court determines that there was no equitable mortgage, Felton's claim under N.J.S.A. 2C:21-19(a) should be dismissed, even if it was properly raised below.

35

Felton's claim under the FRFPA was not raised before the trial court and, accordingly, was properly dismissed by the Appellate Division.  See State v. Robinson, 200 N.J. 1, 20 (2009) ("'[I]t is a well-settled principle that our appellate courts will decline to consider questions or issues not properly presented to the trial court when an opportunity for such a presentation is available unless the questions so raised on appeal go to the jurisdiction of the trial court or concern matters of great public interest.'" (quoting Nieder v. Royal Indem. Ins. Co., 62 N.J. 229, 234 (1973))).

V.

The judgment of the Appellate Division is affirmed in part and reversed in part, and the matter is remanded to the trial court for proceedings consistent with this opinion.  We do not retain jurisdiction.

CHIEF JUSTICE RABNER; JUSTICES LaVECCHIA, ALBIN, and FERNANDEZ-VINA; and JUDGES RODRÍGUEZ and CUFF (both temporarily assigned) join in JUSTICE PATTERSON's opinion.

SUPREME COURT OF NEW JERSEY

NO. __A-60___                              SEPTEMBER TERM 2012

ON CERTIFICATION TO _____Appellate Division, Superior Court_____

TAHIR ZAMAN,

      Plaintiff-Respondent,

          v.

BARBARA FELTON and MR.
FELTON, her husband,

      Defendants-Appellants.

DECIDED _____September 9, 2014_____

_____Chief Justice Rabner_____ PRESIDING

OPINION BY _____Justice Patterson_____

CONCURRING/DISSENTING OPINIONS BY _____

DISSENTING OPINION BY _____

| CHECKLIST | AFFIRM IN PART/ REVERSE IN PART/ REMAND | |
|---|---|---|
| CHIEF JUSTICE RABNER | X | |
| JUSTICE LaVECCHIA | X | |
| JUSTICE ALBIN | X | |
| JUSTICE PATTERSON | X | |
| JUSTICE FERNANDEZ-VINA | X | |
| JUDGE RODRÍGUEZ (t/a) | X | |
| JUDGE CUFF (t/a) | X | |
| TOTALS | 7 | |

1