**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-4238-15T2

HSBC BANK USA, NATIONAL
ASSOCIATION TRUSTEE FOR
DEUTSCHE ALT-A SECURITIES,
INC. MORTGAGE LOAN TRUST,
SERIES 2007-OA2 MORTGAGE
PASS-THROUGH CERTIFICATE,

    Plaintiff-Respondent,

v.

DEBORAH DELBANGO a/k/a
DEBORAH VERITAS a/k/a
DEBORAH F. VERITAS, and
NATIONAL CITY BANK,

    Defendants-Appellants.

_____

Argued August 8, 2017 – Decided August 17, 2017

Before Judges Hoffman and Currier.

On appeal from the Superior Court of New Jersey, Chancery Division, Monmouth County, Docket No. F-014533-14.

Gary E. Fox argued the cause for appellant (Fox & Melofchik, L.L.C., attorneys; Mr. Fox on the briefs).

Stuart I. Seiden argued the cause for respondent (Duane Morris LLP, attorneys; Mr. Seiden, Brett L. Messinger, and Kelly K. Bogue, of counsel and on the brief).

PER CURIAM

In this residential foreclosure action, defendant Deborah Delbango appeals from an order entered after trial striking her answer and referring the case to the Office of Foreclosure, and the subsequent final judgment. After a review of the contentions in light of the record and applicable legal principles, we affirm.

We discern the following facts and procedural history from the record on appeal.

In January 2007, defendant executed an adjustable rate note to IndyMac Bank, FSC and a mortgage securing the note to Mortgage Electronic Registration Systems, Inc.

In December 2011, defendant became unemployed and she apprised IndyMac of her situation in January 2012. Defendant and IndyMac entered into a conditional forbearance agreement (agreement) in February 2012. The agreement permitted defendant to make lower monthly payments for one year that would be applied towards the original principal and interest. The bank would not undertake any legal action against defendant as long as she was in compliance with the agreement. Although the agreement stated that IndyMac would work with defendant to identify "a more permanent foreclosure prevention alternative," it clarified that defendant might not qualify for any foreclosure alternative and

the bank had the sole discretion to make that decision. It further advised that there was no guarantee that the loan would be eligible for consideration under the Home Affordable Modification Program (HAMP).

In April 2013, defendant was informed in a Notice of Intention to Foreclose (NOI) that she was in default on her mortgage as of June 2012. Plaintiff HSBC Bank U.S. was identified in the NOI as the lender.[1] The NOI advised defendant that she needed to pay $28,627.44 within thirty-five days in order to cure the default.

IndyMac sent defendant a notice in October 2013 that it was transferring the servicing of her loan to Ocwen Loan Servicing, LLC (Ocwen) effective November 1. Ocwen contacted defendant shortly thereafter, advising that it was evaluating her qualification for HAMP before considering any other alternatives. Defendant submitted an application under HAMP with all required documents. However, in December 2013, defendant was informed by Ocwen that plaintiff did not allow loan modifications.

Plaintiff filed its complaint for foreclosure in April 2014. Defendant contested the action and asserted affirmative defenses.

---

[1] At some point not stated in the record, the note was transferred to a new lender — plaintiff HSBC Bank U.S. There is no challenge to plaintiff's ownership of the Note.

A bench trial took place over two days in September 2015 before Judge Patricia Del Bueno Cleary.

Ocwen's representative testified at trial that he had personally reviewed Ocwen's business records and confirmed that plaintiff was in possession of the note and mortgage. He also stated that defendant's account was in default commencing with the monthly payment due on July 1, 2012. The representative explained that although defendant was making payments in accordance with the forbearance agreement, those payments were one-third of the original mortgage payment amount; therefore, the account went into default. He stated: "[B]ecause they were not full payments it would take almost three of those payments just to equal one payment" and therefore the account would reflect it was in default.

Defendant testified at trial that when she learned she was to be laid off from her job, she contacted IndyMac in January 2012 advising of her situation. Defendant stated that IndyMac provided her information on how to apply for the forbearance plan. She received the agreement and signed it, and was of the understanding that as long as she made the payments established under the forbearance plan, she was not defaulting on the note.

Defendant remained current on her mortgage payments through March 2012. In April, she sent in the payment listed on the agreement (roughly a third of her original mortgage payment). She

paid the lesser amounts set forth under the agreement through March 2013. Defendant conceded that when she received her mortgage statement in April 2013, it noted that she was ten months past due in her payments.

At the expiration of the agreement, defendant testified that she was told by an IndyMac representative to fill out an application for a loan modification. She submitted the application and subsequent requests for financial documents and information. Defendant testified that she spoke to numerous representatives of IndyMac and Ocwen during this time period, and that she documented her conversations in handwritten notes. These notes were presented at trial and admitted into evidence. The notes reflect conversations with different people at IndyMac from April through October 2013. The notes reflected that financial information was requested; defendant also called periodically to check on the status of her loan modification application.

Defendant also testified that she was told by several people at IndyMac that she should not make any mortgage payments while she was going through the loan modification process. She did not have any written documentation to support this testimony nor any notes memorializing those conversations.

After defendant received the letter in October 2013 that her loan was being transferred to Ocwen for servicing, she contacted

IndyMac. She states she was told that her application would be transferred to Ocwen who would continue assessing her modification. Before Owen took over the loan on November 1, 2013, defendant stated that several IndyMac representatives contacted her requesting additional financial information. As all of the information was not received by IndyMac before November 1, defendant was told that IndyMac could no longer act on her application, and it was going to be transferred to Ocwen.

Defendant made an appointment to speak with an Ocwen representative in mid-November; during that conversation she was told she needed to submit additional information to process her modification request. Defendant confirmed that she received the subsequent letter in December 2013 advising her that plaintiff did not participate in the HAMP program nor permit loan modifications.

Following the close of counsels' arguments, Judge Cleary issued an oral decision. She noted that plaintiff had proven a prima facie case for foreclosure on the property; there was no dispute that defendant had signed the note and mortgage nor that she had defaulted on the loan. However, defendant asserted the affirmative defense of unclean hands because she had been told by various individuals to stop making payments after the conclusion of the forbearance period.

In addressing the proffered defense, the judge reviewed the "copious notes" that had been presented by defendant memorializing her conversations with the lender's representatives. Judge Cleary stated:

> There are many, many letters, many, many notes, it sets forth times, it sets forth dates, it sets forth names of persons who the defendant contacted about this. There are numerous times where . . . plaintiff told the defendant to send in more information, which she did . . . . But there is nothing in any of these notes that tells us a name of who suggested . . . or who told the defendant that she did not have to pay. There is not a specific date where she was told not to pay.

The judge concluded that defendant had not met her burden of proof to establish unclean hands, and therefore, an order striking the answer and defenses was entered. The matter was transferred to the foreclosure unit.

On appeal, defendant reiterates her argument that the doctrine of unclean hands prevents the entry of a judgment of foreclosure. She relies on <u>Totowa Savings and Loan Ass'n v. Crescione</u>, 144 <u>N.J. Super.</u> 347, 351 (App. Div. 1976), to support her contention that since it was plaintiff who "induced and caused the default," equity requires that such actions not be tolerated. Defendant urges us to fashion an equitable remedy to permit her to remain in her home and resume making her mortgage payments without the imposition of any arrearages.

A-4238-15T2

In considering these arguments, we are mindful of our limited scope of review. "The factual findings of a trial court are reviewed with substantial deference on appeal, and are not overturned if they are supported by 'adequate, substantial and credible evidence.'" Manahawkin Convalescent v. O'Neill, 217 N.J. 99, 115 (2014) (citations omitted). Such deference is especially due when a trial judge's findings "are substantially influenced by [the judge's] opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." Zaman v. Felton, 219 N.J. 199, 216 (2014) (alteration in original) (citation omitted).

Judge Cleary considered all of the evidence presented by defendant. She observed that defendant was meticulous in keeping handwritten notes of her conversations with various mortgage representatives. However, in the multitude of notes admitted into evidence, there was not one reference to a conversation in which defendant was instructed to cease her mortgage payments. There was no support for her allegation that she had been told to stop her payments. The judge found, after hearing and seeing defendant, and considering the written evidence, that defendant could not support her contention that she had been "induced" to default on her mortgage.

We do not find <u>Totowa</u> to be instructive under these circumstances. In that matter, the defendants obtained a mortgage loan from the plaintiff and were told a certain amount would be applied to the principal and interest on the loan each month. <u>Id.</u> at 349. After making the specified monthly payments for twenty years, the defendants believed the loan was satisfied and requested its cancellation. <u>Id.</u> at 350. The plaintiff then determined that the monthly amortization figure had been incorrect, leaving the defendants still owing a sizeable balance on the principal. <u>Ibid.</u>

After the defendants refused to pay the newly established balance, the plaintiff instituted foreclosure proceedings. <u>Ibid.</u> The defendants contended that the default resulted solely from the plaintiff's conduct, and therefore, the plaintiff should be equitably estopped from any recovery. <u>Ibid.</u>

We determined that, despite the mistake made by the bank in the monthly calculation, defendants still owed, and were obligated to pay, the principal balance. <u>Id.</u> at 351. They were not entitled to a "substantial windfall, despite the absence of fault on their part." <u>Ibid.</u> We agreed, however, that the "harsh remedy of foreclosure" should be delayed and that a "fair and reasonable" fee schedule for the payment of the balance due should be set. <u>Id.</u> at 351-52.

A-4238-15T2

We fail to see how <u>Totowa</u> is helpful to defendant's position in the case before us.  There is no contention that plaintiff or its predecessor made any mistake regarding this loan.  Defendant defaulted on her mortgage payments; after the forbearance period ended, no further payments were ever made.  Plaintiff advised defendant of her default and her right to cure through the NOI.  The default was not cured.  It is well established that defendant was not entitled to a mortgage modification, <u>U.S. Bank National Ass'n. v. Curcio</u>, 444 <u>N.J. Super.</u> 94, 114 (App. Div. 2016), and she was informed of that in the forbearance agreement.

The trial judge's determination was supported by the credible evidence in the record.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-4238-15T2