**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NOS. A-4929-15T3
A-4931-15T3

NEW JERSEY DIVISION OF CHILD
PROTECTION AND PERMANENCY,

    Plaintiff-Respondent,

v.

L.M.A. and A.C.,

    Defendants-Appellants.

_____

IN THE MATTER OF THE GUARDIANSHIP
OF A.L.C. and S.M.C., Minors.

_____

        Submitted May 15, 2018 — Decided June 11, 2018

        Before Judges Reisner, Hoffman, and Mayer.

        On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Essex County, Docket No. FG-07-0157-16.

        Joseph E. Krakora, Public Defender, attorney for appellant A.C. (Victor E. Ramos, Assistant Deputy Public Defender, of counsel and on the briefs).

        Joseph E. Krakora, Public Defender, attorney for appellant L.M.A. (Ruth A. Harrigan, Designated Counsel, on the briefs).

Gurbir S. Grewal, Attorney General, attorney for respondent (Jason W. Rockwell, Assistant Attorney General, of counsel; Jaclyn Parks and Lisa J. Rusciano, Deputy Attorney Generals, on the briefs).

Joseph E. Krakora, Public Defender, Law Guardian, attorney for minor (Todd Wilson, Designated Counsel, on the brief).

PER CURIAM

Defendants L.M.A. (Lisa)[1] and A.C. (Anthony), appeal from a June 29, 2016 order terminating their parental rights to their children A.L.C. (Andrew), born in April 2014, and S.M.C. (Sarah), born in April 2015. Lisa also appeals from a January 16, 2018 order, entered after a remand from this court, denying her motion to vacate the guardianship order pursuant to Rule 4:50-1. The children's Law Guardian, and the Division of Child Protection and Permanency (Division), contend that we should affirm the orders on appeal.

After reviewing the record, we affirm the June 29, 2016 order, substantially for the reasons stated by Judge Stephen J. Bernstein in his oral opinion issued on the same date as the order. Judge Bernstein's factual findings are supported by substantial credible evidence, including his evaluation of witness credibility, and based on those findings his legal conclusions are correct.

---

[1] We use initials and pseudonyms to protect the parties' privacy.

Finding no abuse of the trial court's discretion in denying Lisa's Rule 4:50-1 motion on remand, we affirm the January 16, 2018 order substantially for the reasons stated by Judge David B. Katz in his opinion of the same date.[2]

I

For purposes of this opinion, we summarize the most pertinent trial evidence. Both defendants have multiple children — with multiple partners - in addition to Andrew and Sarah. Neither defendant has been able to care for any of those children; they are all either living with another biological parent or in foster care.[3]

Anthony has a significant criminal history and was incarcerated for over a year while this case was pending. His history includes a 2005 arrest for allegedly molesting a male child. In his testimony at the guardianship trial, Anthony did not deny touching the child inappropriately, although he asserted that the charges were dropped because there was no "penetration"

_____

[2] Because Judge Bernstein was unavailable to handle the remand within the time frame set forth in our remand order, the case was reassigned to Judge Katz.

[3] As noted later in this opinion, defendants had a third child together after the Division obtained custody of Andrew and Sarah. The Division filed a separate guardianship action concerning that child, which resulted in termination of defendants' parental rights.

and the parents did not cooperate with the prosecution. Anthony also admitted beating one of Lisa's other children with a belt, although he denied the child's allegation that Anthony punched him. Significantly, Anthony also has a documented history of domestic violence. He admitted assaulting his ex-wife, and he admitted assaulting Lisa when some of their children were present.

At the time of the guardianship trial, Anthony had no concrete plans to parent his children. Instead, he planned to move out of state and reunite with his ex-wife.[4] The Division presented unrebutted expert testimony that Anthony was not a psychologically fit parent and had no bond with the children. The trial judge credited that testimony.

The record supports the conclusion that Lisa was unable or unwilling to protect the children from Anthony, and she was unwilling to end their relationship. Initially, she abetted Anthony in his efforts to conceal his identity and thus conceal his criminal record, including the 2005 sexual assault charge and convictions for aggravated assault and weapons possession. Later, she minimized and denied his acts of domestic violence, and brought

---

[4] In his trial testimony, Anthony asserted that, in the alternative, he might move with the children to Ohio, using money he would purportedly obtain from cooperating with criminal law enforcement authorities. The trial court later described Anthony's plans as "pie in the sky."

the children to visit Anthony despite a court order that he have no contact with them. She lied about her own continued relationship with Anthony, even concealing the fact that she had another child (Anna) with him, after telling the Division that their relationship was over.[5]

Lisa also failed to deal with her drug problems. She attended several drug treatment programs but relapsed in January 2016. Thereafter, even as the June 2016 trial approached, she repeatedly tested positive for drugs, including oxycodone, oxymorphone, and marijuana. She gave birth to Anna, her sixth child, on April 20, 2016, and tested positive for marijuana at the birth.

Some additional details will further illustrate Anthony and Lisa's toxic relationship and Lisa's inability to protect the children. On August 8, 2014, Anthony brutally attacked Lisa. The police found Lisa wandering in the street with one of her older children and Andrew, who was then a baby. Lisa was bleeding and bruised. She had a bite mark on her face, and bruises and bite marks on her body. Nonetheless, Lisa initially denied that Anthony had assaulted her and refused to sign a complaint. She later refused to acknowledge to the Division that their relationship was

---

[5]   Anthony participated in the deception as well, denying that Anna was his child until the court ordered him to take a paternity test. We granted the Division's motion to supplement the record with that information.

marked by domestic violence, and she repeatedly refused to attend domestic violence counseling. In October 2014, the Division obtained custody of Andrew and all of the other children living with Lisa, due to evidence of a continuing pattern of domestic violence and Lisa's persistent failure to keep Anthony away from the children.

Despite a court order precluding Anthony from having contact with any of the couple's children, when Lisa was eventually allowed unsupervised visitation with the children, she brought them to visit Anthony at a halfway house where he was incarcerated. She then denied doing this, until the Division confronted her with the institution's security video showing that she was present with the children.

When Lisa became pregnant with Sarah, she tried to conceal the pregnancy from the Division. Due to concerns about the child's safety, the agency took custody of Sarah on April 29, 2015, three days after her birth.

Lisa's pattern of deception continued as the case was pending. During a February 22, 2016 psychological evaluation with Dr. Singer, Lisa minimized her drug problem and denied that she was pregnant. At that time, Dr. Singer recommended that the Division give Lisa another four months to address her problems. When the Division notified Dr. Singer that Lisa had relapsed into drug use,

and that she recently had a sixth child while testing positive for marijuana, he recommended a re-evaluation. Dr. Singer's second evaluation, on May 19, 2016, led to his recommendation that Lisa was unable to safely parent Andrew and Sarah. Notably, Dr. Singer opined that, even if Lisa successfully completed a drug treatment program, she would need at least a year of complete sobriety before she could possibly safely regain custody of the children. Dr. Singer also testified that Lisa suffered from depression and appeared to be self-medicating with illegal drugs instead of taking her prescribed psychiatric medication.

Sarah has been living in foster care since two days after she was born. On April 4, 2016, a few months before the guardianship trial began, she was moved to the same resource home where Andrew was living. Sarah has no parent-child relationship with either Lisa or Anthony. She was still a baby when Dr. Singer performed a bonding evaluation with the resource parents in 2016, but according to Dr. Singer, she had the beginning of a bond with them. She has now lived with the resource family for an additional two years.

Andrew has been with the same resource family since 2014, and they have become his psychological parents. According to Dr. Singer, although Andrew has a bond with Lisa, it is not the same as his parent-child connection with the resource parents. They

A-4929-15T3

could mitigate any harm that would occur if Lisa's parental rights to Andrew were terminated. Anthony was incarcerated or subject to a no-contact order for most of Andrew's life, and Andrew has no parent-child relationship with him.

In his oral opinion, Judge Bernstein found that the Division had satisfied the four prongs of the best interests test, N.J.S.A. 30:4C-15.1(a), and that termination of defendants' parental rights was in the children's best interests. He found that the children's need for a stable and permanent home was paramount and neither parent could provide that home.

The judge found that Anthony was Lisa's "kryptonite" — a destructive force in her life — but she could not disentangle herself from the relationship. He also found that Lisa was persistently deceptive, and her refusal to acknowledge her problems stymied the Division's many attempts to provide her with services. The judge accepted Dr. Singer's opinion that Lisa could not safely act as a parent and was unlikely to be able to do so in the future.

The judge likewise found that Anthony could not safely parent the children. He found that Anthony had no parent-child relationship with the children, and had no realistic plan to care for them. The judge also found that Anthony could not safely care for the children due to his lack of stability, his history of

violent conduct, and his failure to cooperate with the Division's multiple efforts to provide him with drug treatment.

II

To obtain termination of parental rights, the Division must satisfy all four prongs of the following test:

> (1) The child's safety, health or development has been or will continue to be endangered by the parental relationship;
>
> (2) The parent is unwilling or unable to eliminate the harm facing the child or is unable or unwilling to provide a safe and stable home for the child and the delay of permanent placement will add to the harm. Such harm may include evidence that separating the child from his resource family parents would cause serious and enduring emotional or psychological harm to the child;
>
> (3) The Division has made reasonable efforts to provide services to help the parent correct the circumstances which led to the child's placement outside the home and the court has considered alternatives to termination of parental rights; and
>
> (4) Termination of parental rights will not do more harm than good.
>
> [N.J.S.A. 30:4C:15.1(a).]

These four prongs are neither discrete nor separate, but overlap "to provide a comprehensive standard that identifies a child's best interests." N.J. Div. of Youth & Family Servs. v. F.M., 211 N.J. 420, 448 (2012) (citation omitted); In re Guardianship of K.H.O., 161 N.J. 337, 348 (1999). "The

considerations involved are extremely fact sensitive and require particularized evidence that address[es] the specific circumstances in the given case." N.J. Div. of Youth & Family Servs. v. R.G., 217 N.J. 527, 554 (2014) (citation omitted) (alteration in original). The Division must prove by clear and convincing evidence all four statutory prongs. Ibid.

Our review of the Family Part judge's decision in a guardianship case is limited. R.G., 217 N.J. at 552. "[T]he trial court's factual findings should be upheld when supported by adequate, substantial, and credible evidence." Ibid. We accord deference to factual findings of the Family Part given its "superior ability to gauge the credibility of the witnesses who testify before it and because it possesses special expertise in matters related to the family." F.M., 211 N.J. at 448. We will not overturn a family court's findings unless they were "so wide of the mark that the judge was clearly mistaken." N.J. Div. of Youth & Family Servs. v. G.L., 191 N.J. 596, 605 (2007).

We will not disturb a trial court's ruling on a Rule 4:50-1 motion, absent "a clear abuse of discretion." Hous. Auth. of Morristown v. Little, 135 N.J. 274, 283 (1994).

### III

On this appeal, Lisa presents the following points of argument:

POINT I: THE LOWER COURT ERRED IN ITS CONCLUSION THAT TERMINATION OF PARENTAL RIGHTS WAS IN THE BEST INTEREST OF THE CHILDREN BECAUSE THE FOUR PRONGS OF THE BEST INTERESTS TEST WERE NOT PROVEN BY CLEAR AND CONVINCING EVIDENCE.

(A)

REVERSAL IS WARRANTED BECAUSE THE EVIDENCE PRESENTED DID NOT SUPPORT THE LOWER COURT'S CONCLUSION THAT ANDREW AND SUSAN'S SAFETY, HEALTH OR DEVELOPMENT WAS OR WILL CONTINUE TO BE ENDANGERED BY THE PARENTAL RELATIONSHIP.

(B)

THE COURT'S CONCLUSIONS THAT LISA WAS UNABLE OR UNWILLING TO ELIMINATE THE HARM FACING HER CHILDREN AND UNWILLING OR UNABLE TO PROVIDE A SAFE AND STABLE HOME ENVIRONMENT WERE ERRONEOUS.

(C)

THE TRIAL JUDGE ERRED IN HIS DETERMINATION THAT DCPP SATISFIED THE REASONABLE EFFORTS STANDARD BECAUSE IT FAILED TO PROVIDE SERVICES THAT WERE REASONABLE UNDER ALL THE CIRCUMSTANCES AND THE COURT DID NOT EXPLORE ALTERNATIVES TO TERMINATION.

1. THE TRIAL JUDGE ERRED IN HIS DETERMINATION THAT DCPP'S UNREASONABLE COOKIE CUTTER APPROACH, RATHER THAN TAILORED SERVICES, SATISFIED THE THIRD PRONG OF THE TEST.

2. THE TRIAL JUDGE ERRED IN HIS DETERMINATION THAT DCPP SATISFIED THE THIRD PRONG OF THE BEST INTEREST TEST BECAUSE IT PROVIDED SERVICES THAT WERE NOT APPROPRIATE UNDER THE CIRCUMSTANCES AND THAT VIOLATED THE

11

PROVISIONS OF THE AMERICANS WITH DISABILITIES ACT. (42 U.S.C. § 12101 ET SEQ.) (NOT RAISED BELOW)

3. THE TRIAL JUDGE FAILED TO MAKE A DETERMINATION THAT DCPP CONSIDERED ALTERNATIVES TO TERMINATION.

(D)

REVERSAL IS WARRANTED BECAUSE THE EVIDENCE PRESENTED DID NOT SUPPORT THE LOWER COURT'S CONCLUSION THAT TERMINATION OF PARENTAL RIGHTS WOULD NOT DO MORE HARM THAN GOOD.

We decline to address Lisa's arguments directed to the Americans With Disabilities Act (ADA), 42 U.S.C. §§ 12101 to 12213, because they were not presented to the trial court. See Zaman v. Felton, 219 N.J. 199, 226-27 (2014). However, even if we consider the arguments they are without merit, because the Division's failure to comply with the ADA is not a defense to a guardianship action. See N.J. Div. of Youth & Family Servs. v. A.G., 344 N.J. Super. 418, 442 (App. Div. 2001). Lisa's related argument, that the Division failed to provide services "tailored" to her psychological needs, was not supported by any expert or lay testimony. In fact, Lisa did not present any witnesses at the trial.

Contrary to Lisa's arguments, substantial credible evidence supports the judge's findings as to the first three prongs of the best interests test. Lisa contends that the Division did not do

enough to convince her to attend domestic violence counseling. We disagree. The Division repeatedly referred Lisa for counseling. She chose not to attend. The agency is not required to force a parent to accept services. Lisa attempts to present her drug problems in a positive light by arguing that she was "making progress toward sobriety" at the time of the trial. However, viewed in the light most pertinent to her children's welfare, even as the trial date approached she was still abusing oxycodone and other drugs and was not able to safely parent the children.

The record also supports a finding that the Division appropriately considered possible relative placements. A few months before the trial, Lisa put forth her mother as a possible alternate placement. At that point, Andrew had been with the same resource family for nearly four years, and Sarah was thriving in the same pre-adoptive home. There was no evidence that the grandmother was ready, willing or able to adopt the children.

Likewise, substantial credible evidence supports Judge Bernstein's finding that the Division satisfied the fourth prong of the best interests standard. Lisa's appellate arguments, presented prior to the remand, are without sufficient merit to warrant further discussion. R. 2:11-3(e)(1)(E).

Lisa's post-remand arguments, relating to her Rule 4:50-1 motion, are without sufficient merit to warrant discussion beyond

that set forth in the trial court's opinion and these brief additional comments. Her belated completion of a drug treatment program and an eight-session domestic violence program does not warrant vacating the order terminating her parental rights to these children. There is no evidence that Lisa has made the kind of dramatic turnaround in her life, as occurred in <u>In re Guardianship of J.N.H.</u>, 172 N.J. 440 (2002).

As importantly, unlike the child in <u>J.N.H.</u>, there is no evidence that Andrew and Sarah are suffering from severe adjustment problems in foster placement. <u>Id.</u> at 479-80. At the time of the guardianship trial, both children were thriving in a stable placement with resource parents who were committed to adopting them. Lisa presented no evidence that those circumstances have changed. Hence, there was no basis to re-visit the trial court's original findings as to the children's best interests. <u>Ibid.</u> Nor was there a need to hold a plenary hearing on the remand. As Judge Katz noted, after a recent guardianship trial involving yet another of Lisa's children, the court terminated her parental rights despite the current evidence of her drug treatment and DV classes.

IV

In his appeal, Anthony presents the following points of argument:

I. TERMINATION OF A.C.'S PARENTAL RIGHTS WAS NOT WARRANTED UNDER THE "BEST INTERESTS TEST" OF N.J.S.A. 30:4C-15.1A.

A. The Court Erred In Deeming The First Prong Of The Test Satisfied By Clear And Convincing Evidence Where A.L.C. Was Not Endangered By The Circumstances That Resulted In His Removal And S.M.C. Was Born Several Months Thereafter, Where The Basis Of A.C.'S Incarceration Would Not Have Endangered The Children, A.C. Worked And Assisted L.M.A. With Household Expenses Prior To Incarceration And A.C. Pursued Services While Incarcerated.

B. The Court Erred In Deeming The Second Prong Of The Test Satisfied By Clear And Convincing Evidence Where A.C. Engaged In Services While Incarcerated, Maintained Housing And Employment By The Time Of Trial And Provided Alternate Permanency Plans For The Two Children.

C. The Court Erred In Finding Prong Three Of The Test Satisfied Where DCPP Was Aware Of Services Recommended By An Evaluating Psychologist But DCPP Did Not Provide, Discuss Or Encourage A.C. To Avail Himself Of Those Services And Where The Court Failed To Consider The Merits Of R.A. As A Potential Relative Caretaker.

> 1. The Record Does Not Support a Finding That DCPP Made Reasonable Efforts to Provide Services to Reunify The Family.

> 2. The Record Does Not Establish that the Court Below Considered Alternatives to Termination of Parental Rights.

D. The Court Erred In Deeming the Fourth Prong Satisfied by Clear and Convincing Evidence Where The Bonding Evaluation Represented

A.C.'S First Contact With His Children in Over a Year, DCPP's Expert Could Not Conclude a Bond Existed Between S.M.C. and the Foster Parents, And the Expert Prioritized Parenting Capacity, Which A.C. Had Clearly Demonstrated, Above the Bonding Evaluation.

Those contentions are without sufficient merit to warrant discussion, beyond the following comments. See R. 2:11-3(e)(1)(E). Anthony minimizes the extent of his domestic violence, which resulted in Andrew being placed in foster care. Like Lisa, Anthony also fails to acknowledge the harmful effect on children of remaining in foster care because their parents cannot get their lives in order. See In re Guardianship of D.M.H., 161 N.J. 365, 379 (1999). He blames the Division for his own failure to take advantage of services the Division tried to arrange for him. To the extent that the Division focused greater effort on providing services to Lisa, it acted reasonably, because Anthony told the Division that he planned to move out of state and let Lisa parent the children.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION