**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2487-16T2

LOUIS BADUINI and
JOEL SCHNETZER,

    Plaintiffs-Appellants,

v.

LAND USE BOARD OF INDEPENDENCE
TOWNSHIP, ROE'S ISLAND, LLC and
AMY S. GREENE ENVIRONMENTAL
CONSULTANTS, INC.,

    Defendants-Respondents.

_____

Argued May 15, 2018 — Decided July 31, 2018

Before Judges Fasciale, Sumners and Natali.

On appeal from Superior Court of New Jersey,
Law Division, Warren County, Docket No.
L-0334-15.

Lawrence P. Cohen argued the cause for
appellants (Lavery, Selvaggi, Abromitis &
Cohen, PC, attorneys; Lawrence P. Cohen, of
counsel and on the briefs; William H. Pandos,
on the briefs).

Thomas J. Trautner, Jr., argued the cause for
respondents Roe's Island, LLC and Amy S.
Greene Environmental Consultants, Inc.
(Chiesa, Shahinian & Giantomasi, PC,

attorneys; Thomas J. Trautner, Jr. and Lauren R. Tardanico, on the brief).

Eric M. Bernstein argued the cause for respondent Land Use Board of Independence Township (Eric M. Bernstein & Associates, LLC, attorneys, joins in the brief of respondents Roe's Island, LLC and Amy S. Green Environmental Consultants, Inc.).

PER CURIAM

Plaintiffs Louis Baduini and Joel Schnetzer appeal from a Law Division order dismissing their action in lieu of prerogative writs to invalidate the decision by Independence Township Land Use Board (Board) that the wetlands mitigation project (the project) proposed by defendants Roes Island, LLC, and Amy S. Greene Environmental Consultants, Inc. (Amy S. Greene) (collectively defendants) is permitted in an agricultural residential zone (AR zone). We affirm.

Roes Island is the owner of an eighteen-acre tract of land (the property) located in Independence Township that is part of a larger parcel of approximately fifty-one acres, of which parts are located in Liberty Township. Amy S. Greene, a member and affiliate of Roes Island, is an environmental consulting firm with an expertise in wetlands restoration and enhancement.

Public Service Electric & Gas Company (PSE&G), seeking to fulfill to its state-mandated obligations to undergo wetlands mitigation to create or enhance existing wetlands as compensation

A-2487-16T2

for its disturbance of wetlands in the other areas of the state, entered into an agreement with Roes Island to perform wetlands mitigation responsibilities on behalf of PSE&G at the property. At one time, the property may have been considered wetlands, but it had been drained and converted for agricultural use some time ago. Under the project, wetlands would be restored by plowing; planting trees in close proximity to existing streams and ditches; allowing a return to its natural state of forested wetlands with permanent stabilization of the area with native grasses, wildflowers, trees and shrubs; installation of a temporary deer exclusion fence to protect plants; the maintenance of bee hives for the commercial sale of honey; and the filling of secondary ditches on the property. A portion of the property is permanently conserved through a deed restriction, and there will be no permanent structures built thereon.

Based upon the advice of the Independence Township Land Use Officer, Amy S. Greene submitted an application on behalf of Roes Island to the Board seeking an interpretation of the township's land use ordinance Section 255-98 (the ordinance): to determine if the project was within ordinance's definition of "customary agricultural and horticultural uses" in an AR zone. The ordinance prescribes the following principle uses in an AR zone:

(1) One-family dwellings.

(2) Customary agricultural and horticultural uses, including farms, greenhouses and nurseries, and including such shelter as may be required for seasonal farm labor. Customary agricultural and horticultural uses shall include the raising, hauling or sale of feed or bedding customarily used in a farming operation and the retail sale of farm products.

(3) Soil processing and soil removal, provided that the provisions of the Earth Removal Ordinance of the Township of Independence[] are complied with.

[Independence Twp., N.J., Land Dev. Ordinance §255-98(A) (1979).]

In the alternative, the application sought a use variance for the project.

During the course of four diverse hearing dates over a five-month period, defendants provided detailed testimony — regarding the scope and benefits of the project — by Amy S. Greene's principal, a wetlands scientist; a professional planner; an expert in the field of wetlands science, wetland hydrology, botany, and forestry; a licensed civil engineer; and a wildlife biology expert. At the Board's request, the Warren County Mosquito Commission Superintendent testified regarding the commission's thoughts concerning the best methods for the way the project can reduce mosquitoes. In addition, Schnetzer, a self-proclaimed potential

4

landowner in Independence Township, appeared before the Board.[1] He objected to the application; commenting on his belief that farmland would be lost due to a deed restriction on the property, and questioning defendants' witnesses about how the project was akin to agriculture and how the project would be monitored.

After all witnesses testified, the Board went into executive session upon the advice of its attorney, to discuss potential litigation and attorney-client privilege under the Open Public Meetings Act (OPMA), N.J.S.A. 10:4-12(b). Upon return to public session, the Board determined that the project constituted an agricultural use as set forth in the ordinance. The Board Chairman further noted that wetland mitigation or wetland enhancement would not in and of itself be considered "agriculture" in order to support a favorable interpretation for the project but as an element of other agricultural uses proposed as part of the overall use of the property; therefore, the enhancement of wetlands and any associated mitigation is permitted. Other "use" and "accessory use" are defined in Section 255-3 as:

> USE: The specific purpose for which a parcel of land or a building or a portion of a building is designed, arranged, intended, occupied or maintained.

---

[1] No parties addressed his standing to file suit, so we do not as well.

A-2487-16T2

USE, ACCESSORY: A use which is customarily associated with and subordinate to the principal use of a lot or building and which is located on the same lot therewith.

The Board approved a resolution, which memorialized its interpretation of the ordinance approving the project.

Plaintiffs filed an action in lieu of prerogative writs to rescind the Board's action. The Law Division judge disagreed and entered an order dismissing the action with prejudice. In his eighteen-page statement of reasons in which he detailed the project's scope, the witnesses' testimony, the applicable law, and the Board's decision, the judge determined that - even though it may not fit in the narrow categories of "traditional" agricultural use - defendants' project was permitted in the AR zone because its uses were agricultural in nature and consistent with the intent of the ordinance. The judge held that the "enumerated agricultural activities in the ordinance are not meant to represent an exhaustive list, but are meant to illustrate as evidence of the phrase 'included but not limited to.'" The judge reasoned that "wetlands are a condition of the property and not an independent use of land for which a property owner would need approvals." Thus, he found that the project's plan, which includes soil conservation, forest management and beekeeping, is agricultural in nature.

In their appeal brief, plaintiffs argue:

POINT I

THE TRIAL COURT ERRED BY FAILING TO CONSIDER WHETHER THE INDEPENDENCE TOWNSHIP LAND USE BOARD'S DECISION WAS NULL AND VOID BEFORE CONSIDERING THE SUBSTANTIVE BASIS OF THE BOARD'S DECISION.

POINT II

THE TRIAL COURT ERRED BY FAILING TO CONSIDER WHETHER THE LAND USE BOARD VIOLATED THE OPEN PUBLIC MEETINGS ACT.

POINT III

THE TRIAL COURT LACKED SUBJECT-MATTER JURISDICTION TO CONSIDER THE SUBSTANTIVE BASIS OF THE INDEPENDENCE TOWNSHIP LAND USE BOARD'S DECISION BECAUSE THE BOARD ACTED IN VIOLATION OF THE OPEN PUBLIC MEETINGS ACT.

POINT IV

THE TRIAL COURT ERRED BY FAILING TO CONSIDER AN AMENDED INDEPENDENCE TOWNSHIP ZONING ORDINANCE WHICH EXPLICITLY EXCLUDES "WETLANDS REMEDIATION AND/OR MITIGATION" AS A PERMITTED USE.

POINT V

THE TRIAL COURT ERRED IN DETERMINING THAT DEFENDANTS' PROPOSED ACTIVITIES ARE PERMITTED IN THE INDEPENDENCE TOWNSHIP AGRICULTURAL-RESIDENTIAL ZONE.

In their reply brief, plaintiffs argue:

POINT I

THE PROPOSED USES AS INTERPRETED BY THE LAND USE BOARD AND THE TRIAL COURT BELOW AS BEING

7                                              A-2487-16T2

CONSISTENT WITH THE PERMITTED USES IN THE ZONE AS "CUSTOMARY AGRICULTURAL AND HORTICULTURAL USES" IS INCORRECT.

POINT II

THE ISSUE AS TO WHETHER OR NOT THE PROPOSED USES BY DEFENDANT [ROES] ISLAND ARE PERMITTED IN THE INDEPENDENCE TOWNSHIP AR-ZONE IS NOT MOOTED BY THE DOCTRINE OF PREEMPTION.

POINT III

THE LAND USE BOARD'S VIOLATION OF THE OPEN PUBLIC MEETINGS ACT WAS NOT CURED BY "DELIBERATIONS" IN OPEN SESSION.

We first address plaintiffs' argument in Point IV that the judge erred by failing to consider Independence Township ordinance, Section 255-3 — amended on December 1, 2015, after defendants' application was filed on October 31, 2014 — that explicitly excludes "[w]etlands remediation and/or mitigation" from the definition of agriculture. Since the project involves wetlands remediation, plaintiffs contend the amendment requires a finding that the project was not an agriculture use permitted in the AR zone and that the Board's decision should be rescinded.

We pass on the merits of this argument because plaintiffs failed to raise this argument before Judge Pursel entered his order,[2] as we decline to consider arguments raised for the first

---

[2] January 3, 2017.

time on appeal that do not "go to the jurisdiction of the trial court or concern matters of great public interest." Zaman v. Felton, 219 N.J. 199, 226-27 (2014) (quoting State v. Robinson, 200 N.J. 1, 20 (2009)). Moreover, under N.J.S.A. 40:55D-10.5,[3] the "time-of-application" rule, the court must consider the law in effect when an application to the Board was made. Since Section 255-3 was amended after defendants' interpretation application, its current iteration should not be considered to determine whether the project is permissible under the ordinance.

In addition, we find no merit to plaintiffs' argument that defendants' application for an interpretation does not meet the statutory definition of an "application for development" under N.J.S.A. 40:55D-3. Although plaintiffs' application sought an interpretation of the ordinance, it also requested a use variance to implement the project in the event the Board determined the project did not involve uses consistent with the ordinance. Consequently, the post-application amendments to Section 255-3 do not invalidate the Board's decision.

---

[3] N.J.S.A. 40:55D-10.5 provides, "[n]otwithstanding any provision of law to the contrary, those development regulations which are in effect on the date of submission of an application for development shall govern the review of that application for development and any decision made with regard to that application for development."

Next, we next address plaintiffs' arguments in Point II of their initial brief and Point III of their reply brief that the Board erred by going into executive session and preventing the public the right "to be present at all meetings of public bodies, and to witness in full detail all phases of the deliberation, policy formulation, and decision making of public bodies," N.J.S.A. 10:4-7, and that the court erred in not considering whether the Board's executive session violated the OPMA. Although the court did not address plaintiffs' OPMA claim, we will address the claim under Rule 2:10-5, which provides that "[t]he appellate court may exercise such original jurisdiction as is necessary to the complete determination of any matter on review."

We see no merit to the claim. The record reveals that the Board entered into an executive session upon its attorney correctly citing N.J.S.A. 10:4-12(b)(7), which provides that a public body can meet in an executive session to discuss "matters falling within the attorney-client privilege" and "pending or anticipated litigation." When the Board came out of its executive session, it deliberated publicly so the general public was not deprived of the opportunity to witness the process.

Plaintiffs' remaining arguments essentially challenge the merits of the court's findings that the project was permissible under the ordinance. They contend the court failed to explain how

defendants' project qualifies as "agricultural activity" since defendants do not propose to sell, lease or personally use any plants or other products that may come from the site. Plaintiffs maintain that defendants' activities, consisting of forest management, wood cuttings, soil conservation, and beekeeping, do not constitute as agricultural use. They contend the forest management plan does not involve the production of any timber or wood products. They likewise argue that a soil conservation plan does not qualify as agricultural use unless there are payments, for instance under a governmental program for soil conservation. They also contend the wood cuttings were not going to produce any revenue, but were intended to be used at some time in the future to establish more forested wetlands. Additionally, they assert beekeeping is such a minor part of the project that it should not be considered to justify as a use under the project.

As a threshold matter, when reviewing a trial court's determination of the validity of an action taken by a land use board, we are bound by the same standard as the trial court. N.Y. SMSA, L.P. v. Bd. of Adjustment of Twp. of Weehawken, 370 N.J. Super. 319, 331 (App. Div. 2004). Thus, we give substantial deference to findings of fact, Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 362 (2011), but review de novo those "interpretation[s] of the law and the legal consequences that flow

A-2487-16T2

from established facts," Manalapan Realty, L.P. v. Twp. Comm., 140 N.J. 366, 378 (1995). A trial court's decision that is based on its interpretation of the municipality's ordinances, the interpretation is primarily a legal issue, Wyzykowski v. Rizas, 132 N.J. 509, 518 (1993), which "is not entitled to any special deference," Mountain Hill, L.L.C. v. Zoning Bd. of Adjustment of Twp. of Middletown, 403 N.J. Super. 210, 234-35 (App. Div. 2008) (citation omitted). We have long recognized that "because of their peculiar knowledge of local conditions," municipal land use boards "must be allowed wide latitude in their delegated discretion." Jock v. Zoning Bd. of Adjustment, 184 N.J. 562, 597 (2005); accord Booth v. Bd. of Adjustment of Rockaway Twp., 50 N.J. 302, 306 (1967).

Mindful of these principles, we see no reason to disturb the judge's finding that the project is consistent with agricultural uses and accessory uses, which are allowed in an AR zone under the ordinance. Thus, we reject plaintiffs' arguments and affirm substantially for the reasons stated by the judge in his written statement of reasons issued with his order.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2487-16T2