**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3464-21

IN RE REAUTHORIZATION OF
CAFRA INDIVIDUAL PERMIT
AND TAW, 1500-04-0001.5
LUP190001.

_____

Argued November 13, 2023 – Decided December 12, 2023

Before Judges Gilson and Berdote Byrne.

On appeal from the New Jersey Department of Environmental Protection.

Daniel A. Greenhouse argued the cause for appellants Pinelands Preservation Alliance and Save Barnegat Bay (Eastern Environmental Law Center, attorneys; Daniel A. Greenhouse and Maggie Broughton, on the briefs).

Kevin DeCristofer, Deputy Attorney General, argued the cause for respondent New Jersey Department of Environmental Protection (Matthew J. Platkin, Attorney General, attorney; Donna Arons, Assistant Attorney General, of counsel; Kevin DeCristofer, Deputy Attorney General, on the brief).

William F. Harrison argued the cause for respondent Jaylin Holdings, LLC (Genova Burns, LLC, attorneys; William F. Harrison and Jennifer Borek, of counsel and on the brief).

PER CURIAM

Appellants Pinelands Preservation Alliance (PPA) and Save Barnegat Bay (SBB) seek to prevent the development of property located in the coastal region of the Pinelands National Reserve. After almost twenty years of administrative review and litigation, appellants again claim the Department of Environmental Protection (DEP) erred in granting Jaylin Holdings, LLC's (Jaylin) a Coastal Area Facility Review Act (CAFRA) [1] Individual Permit and Transition Area Waiver.

Specifically, appellants contend DEP (1) acted erroneously and arbitrarily in ignoring the required Flood Hazard Area (FHA) and Riparian Zone (RZ) verifications based on an outdated permit and a generalized finding that Jaylin's proposed development was far enough from those protected areas; (2) failed to include the FHA and RZ in its calculation of the applicable impervious coverage limits; (3) erroneously permitted Jaylin's proposed modified transition area to encroach upon the FHA and RZ; and (4) arbitrarily ignored the Pinelands Commission's (the Commission) determination that Jaylin's proposed development is inconsistent with the Pinelands Comprehensive Management

---

[1] N.J.S.A. 13:19-1 to -21.

A-3464-21

Plan (CMP). According to appellants, each one of these errors warrants reversal of the permit and waiver reauthorizations and require further submissions by Jaylin and administrative review by DEP before any development can begin.

Having reviewed the record and applicable law, we discern nothing arbitrary, capricious, or unreasonable in DEP's reauthorization of the CAFRA Individual Permit and Freshwater Transition Area Waiver to Jaylin. Because appellants had notice and ample opportunity to raise the alleged defective delineations of the FHA and RZ on the property to DEP and failed to do so in multiple prior rounds of comments and litigation, they are precluded from raising this issue on this appeal. And substantively, appellants fail to show the FHA or RZ zones depicted on Jaylin's application are incorrect or require a different result. We also conclude appellants' arguments regarding encroachment of the transition area and impervious coverage limits lack merit. Lastly, we conclude appellants' argument concerning the Commission is moot as we previously ruled on that issue in our prior opinion, see Pinelands Pres. All. v. Dep't of Enviro. Prot., 436 N.J. Super. 510, 516 (App. Div. 2014). Accordingly, we reject all of appellants challenges and leave the permit and waiver in place.

I.

On November 4, 2004, Jaylin applied for a CAFRA Individual Permit and a Freshwater Wetland Transition Area Waiver (TAW) pursuant to the Freshwater Wetlands Protection Act[2] (FWPA) to the DEP's Division of Land Resource Protection (Division) for proposed development of land located in the Townships of Toms River and Manchester (the property). The property is located in the coastal zone of the Pinelands National Reserve. Within 500 meters of the proposed development is an unnamed tributary of the Sunken Branch stream. The property is currently forested and undeveloped and was initially determined by DEP to possess a mix of wetland habitats having intermediate or exceptional resource value. DEP subsequently amended its determination to consider all the property's wetlands to be of exceptional resource value based on more recent information on threatened and endangered species on the property.

Jaylin's initial application sought to construct a 208,433 square foot department store, with an approximately 20,000 square foot garden center, three stormwater basins, parking to accommodate almost 1,200 vehicles, two outparcels to be reserved for future use, and access road off Route 37 and

---

[2] N.J.S.A. 13:9B-1 to -30.

Northampton Boulevard. After fifteen years of administrative review and an appeal in 2014, Jaylin submitted another CAFRA Individual Permit and TAW application on December 9, 2019 (the application). The application proposed a substantially reduced footprint: an 81,275 square foot retail building, a 4,800 square foot restaurant, a 9,322 square foot retail building, 570 parking spaces and associated circulation roadways, stormwater management measures, utilities, and landscaping. Jaylin submitted a Stormwater Management Report and CAFRA Individual Permit Report with its application. The former noted the proposed development was more than 400 feet away from the stream encroachment line and the finished floor elevation was set more than 6 feet above the 100-year flood elevation.

On February 12, 2020, Jaylin's application was found to be administratively complete and proceeded to public comment. PPA timely submitted comments to the application and addressed the TAW averaging plan, threatened and endangered species, coordination with the Commission, and impervious cover requirements. The Commission also provided DEP with its own assessment of Jaylin's proposed development and determined the plan "remain[ed] inconsistent with the wetlands protection and the threatened and endangered . . . species protection standards of the CMP."

The Division issued Jaylin a CAFRA Individual Permit and TAW on September 2, 2020. Included with those approvals was an engineering report which stated a flood hazard verification was not needed because the "[p]roposed development is located at significant higher elevations than the approved stream encroachment line [and is] far enough from the stream."

PPA and SBB appealed on various grounds and DEP moved before us to remand the permitting decision. We granted the remand, and a new thirty-day public comment period was held from April 21, 2021, until May 20, 2021. Again, appellants submitted public comments and requested a hearing. These comments addressed many of the same issues as their previous comment: the TAW averaging plan, threatened and endangered species, coordination with the Commission, and impervious cover requirements. In addition to appellants' comments, sixty-four other persons and entities submitted comments, most of which opposed Jaylin's application. Some of the comments raised concerns about the habitat of the Northern Pine Snake and Pine Barrens Tree Frog, wetlands, impervious cover calculations, stormwater management, and the CMP. Jaylin responded on October 2, 2021. One month later in November 2021, PPA submitted further comments with regards to threatened and endangered specious and impervious cover.

On May 31, 2022, DEP issued a reauthorization of Jaylin's CAFRA Individual Permit and TAW. Concurrent with the approvals, DEP issued an environmental report addressing all the comments it received. DEP then published an Amplification of Record on July 28, 2022, to clarify its May reauthorization. This appeal followed.

II.

Our review of an administrative agency's decision is circumscribed. N.J. Highlands Coal. v. State, Dep't of Env't Prot., 456 N.J. Super. 590, 602 (App. Div. 2017). An agency's decision will not be reversed unless: "(1) it was arbitrary, capricious, or unreasonable; (2) it violated express or implied legislative policies; (3) it offended the State or Federal Constitution; or (4) the findings on which it was based were not supported by substantial, credible evidence in the record." Id. at 602-03 (quoting Univ. Cottage Club of Princeton N.J. Corp. v. State, Dep't of Env't Prot., 191 N.J. 38, 48 (2007)). With respect to DEP, "great deference" is provided to decisions balancing the competing interest of development and conservation. Id. at 603 (quoting In re Stream Encroachment Permit No. 0200-04-0002.1 FHA, 402 N.J. Super. 587, 597 (App. Div. 2008)). The party challenging DEP's permit authorization must demonstrate "not that the agency's action was merely erroneous, but that it was

arbitrary." Ibid. (quoting Stream Encroachment Permit, 402 N.J. Super. at 597).

An agency, however, cannot issue a permit prior to satisfaction of the applicable statutory and regulatory criteria. Del. Riverkeeper Network v. State, Dep't of Env't Prot., 463 N.J. Super. 96, 113 (App. Div. 2020) (quoting In re Authorization for Freshwater Wetlands Gen. Permits, 372 N.J. Super. 578, 596 n.8 (App. Div. 2004)).

## III.

1.      Verification of FHAs and RZs.

First, appellants contend DEP impermissibly relied upon an outdated Stream Encroachment Permit from 2005 and, based on that outdated permit and information, arbitrarily determined Jaylin's proposed development was far enough away from the property's FHA and RZ to obviate verification. According to appellants, the Flood Hazard Area Control Act (FHACA) requires DEP to specifically identify and delineate FHAs to protect the public's health, safety, and general welfare. Because FHAs and RZs are "special areas," Jaylin was required to submit with its application site plans which delineated the "upper and lower limits of all special areas, as described at N.J.A.C. 7:7-9" pursuant to DEP's Coastal Zone Management (CZM) rules.

Appellants argue the only way to avoid verification would be if the proposed development were either: (a) not in a FHA or RZ, or (b) met one of the conditions listed at N.J.A.C. 7:13-5.5(a). Neither DEP nor Jaylin provided any documentation delineating the express locations of the FHA and RZ on the property. Appellants claim it was improper for DEP to issue the CAFRA permit without "knowing these details with formality, certainty and specificity." Appellants contend the matter must be remanded for further findings to correct this "fatal flaw" in the CAFRA permit reauthorization. They further argue, rather than focusing on the requirements of the current regulatory framework, DEP prioritized the stream encroachment line, which is no longer part of the applicable regulations.

As an initial matter, we note that appellants failed to first raise this issue regarding delineation of the FHA and RZ to DEP. Appellants had ample time and opportunity to present their concern that the application lacked precise delineation of the FHA and RZ during the five notice-and-comment periods but failed to do so. Had they done so, Jaylin could have properly and timely responded. Moreover, at oral argument, appellants conceded they do not have an expert or engineering report to demonstrate Jaylin's delineations on its Stormwater Management Report, filed with the application in 2019, are

incorrect or do not fall within the exception to FHACA. In other words, appellants argue only that Jaylin's failure to provide an expert or engineering report delineating the FHA and RZ violates the applicable regulation. Ordinarily, we would not address issues appellants failed to raise before DEP. Stream Encroachment Permit, 402 N.J. Super. at 602.

Nevertheless, we relax this rule when the questions raised on appeal concern matters of great public interest. Zaman v. Felton, 219 N.J. 199, 226-27 (2014). DEP was required to abide by the applicable statutes and regulations regardless of whether appellants raised compliance issues prior to its decision. See L.W. ex rel. L.G. v. Toms River Regional Schs. Bd. of Educ., 381 N.J. Super. 465, 489 (App. Div. 2005) (holding an agency action that violates express or implied legislative or regulatory policies is evidence of arbitrary and capricious conduct).

Because Jaylin's proposed project is near land including a FHA, RZ, and transition area, Jaylin was required to comply with those regulations governing "special water's edge areas." N.J.A.C. 7:7-9.1, 7:7-9.25, 7:7-9.26, 7:7-9.28. An FHA is "the space . . . which lies below the [FHA] design flood elevation." N.J.A.C. 7:13-1.2; see also N.J.A.C. 7:7-9.25. A RZ is "the land and vegetation within and adjacent to a regulated water." N.J.A.C.7:7-9.26. A transition area

10

is that "area of land adjacent to a wetland which minimizes adverse impacts on the wetlands or serves as an integral component of the wetlands ecosystem." N.J.A.C. 7:7-9.28.

FHACA's rules require a verification before, or contemporary with, an authorization of an individual permit. N.J.A.C. 7:13-5.2(b); N.J.A.C. 7:13-5.5. This general requirement is subject to two exceptions. N.J.A.C. 7:13-5.5(a). Relevant here, if DEP determines, "based on a visual inspection of submitted site plans and without review of calculations, that . . . [n]o fill or aboveground structure is proposed within a flood hazard area," then no verification is required. N.J.A.C. 7:13-5.5(b)(1). RZs are absent from N.J.A.C. 7:13-5.5. While verification of a RZ is permissible, N.J.A.C. 7:13-5.2(a)(4), it is not required, see N.J.A.C. 7:13-5.5.

DEP noted the tributary is approximately 650 feet away from the closest point of the proposed project. Topography shows up to eight feet in elevation differences. Based on these regulations, DEP did not arbitrarily waive the FHA verification requirement and was not required to verify the RZ. DEP was permitted to visually inspect the site plans provided by Jaylin and based upon that visual inspection, permitted to find the proposed development was sufficiently far enough from the FHA to waive verification. Jaylin provided site

11

plans with its application in 2019, and nothing in them contradicts DEP's finding. Nor do appellants point to contrary evidence; instead, their argument ignores this exception entirely.

Although Jaylin's Stormwater Management Report referenced the stream encroachment line and the former stream encroachment permit, not the FHA, this supports, rather than detracts from DEP's findings. Put simply, the term "stream encroachment permit" was merely replaced with the term "flood hazard area permit," which is "a permit or authorization issued under [N.J.A.C. 7:13] pursuant to [FHACA]." N.J.A.C. 7:13-1.2. The permits pursuant to the pre-2007 amendments were "called stream encroachment permits" but DEP found the term "impl[ied] the existence of both a stream and an encroachment into the stream, neither of which are necessarily aspects of an activity regulated" under FHACA. 38 N.J.R. 3963 (Oct. 2, 2006). Instead, DEP found the term "flood hazard area permit" was "a more descriptive and accurate term that better reflects the subject matter of [FHACA]." Ibid. There is nothing in the record to suggest reliance upon the previously established stream encroachment line would be arbitrary or erroneous and appellants failed to show any evidence.

As stated previously, N.J.A.C. 7:7-23.4(c)(4)(vii) requires applicants provide site plans, which delineate the upper and lower limits of all special areas

such as FHAs and RZs subject to certain exceptions. The maximum width of a RZ is 300 feet. N.J.A.C. 7:13-4.1(c). This is in addition to any other similar zones present on the property, such as an FHA. N.J.A.C. 7:13-4.1(i). At best, the RZ in question would be afforded a 150-foot zone pursuant to N.J.A.C. 7:13-4.1(c)(2)(iii). The combined 150-foot RZ buffer with the requisite 150-foot transition area would still not reach the proposed development on the property, which is more than 300 feet away from those areas.

There is substantial credible evidence in the record to support DEP's conclusion its reauthorization of the permit did not require an engineer delineate the FHA and RZ. FHA verification is not required before an individual permit is authorized where DEP can determine, pursuant to a visual inspection of submitted site plans, that no fill or aboveground structure is proposed within the FHA. DEP visually inspected the various site maps provided by Jaylin and assessed the distances between the FHA and the proposed development, as well as the project's elevation above the FHA, and issued a report stating verification was unnecessary. In doing so, DEP properly relied on the regulation. Appellants present no evidence DEP's findings are erroneous or arbitrary.

2. The Impervious Cover Calculation.

When a CAFRA permit is requested for land situated in a coastal area, all parties concede any development is limited to thirty percent of the impervious surface coverage. N.J.A.C. 7:7-13.17(d)(1). The net-land area is calculated by totaling the entire acreage of the property and subtracting the seven listed special water's edge areas. N.J.A.C.7:7-13.3(e).

Appellants argue Jaylin and DEP impermissibly failed to include the FHA and RZ in that calculation. Although the applicable regulation does not require those areas be included in the calculation, appellants contend that regulatory omission "lacks any coherence and must be rejected . . . ." Due to this incoherence, appellants request we "issue a precedential opinion which expressly requires [] DEP to account for the FHA and the RZ when calculating the allowable impervious coverage of a site under CZM rules."

Appellant's arguments are unavailing. The regulation specifically lists seven special water's edge areas that are to be subtracted from the total land area calculation. N.J.A.C. 7:7-13.3(e)(2). Although wetlands transition areas must be subtracted from the total land area, N.J.A.C. 7:7-13.3(e)(2)(iv)(v), FHAs and RZs are absent from the list. Appellants' arguments to the contrary ignore the plain language of the regulation requiring DEP to subtract only a subset of the listed special water's edge areas—seven out of a total of fifteen—and would

14

require us to overrule DEP's own regulations based on appellants' unsupported belief there is no reasonable distinction between intermittent stream corridors and FHAs and RZs. We decline to change the DEP regulation. In that regard, we note appellants did not file a timely objection to the DEP regulations. See In re Adoption of N.J.A.C. 11:3-29 ex rel. State, Dep't of Banking & Ins., 410 N.J. Super. 6, 26 (App. Div. 2009) ("To permit a party . . . to raise objections to a rule . . . that it failed to raise before the administrative agency at the appropriate time would be to undermine the very purpose of administrative agencies.") (quoting Bergen Pines Cnty. Hosp. v. N.J. Dep't of Human Servs., 96 N.J. 456, 475 (1984)).

There is sufficient credible evidence in the record supporting DEP's exclusion of these areas. FHAs and RZs are not listed as excludable in the plain language of the statute. The specific seven areas are excluded because they are "the most sensitive special water's edge areas," 32 N.J.R. 503(a) at Response to Comment 465 (Feb. 7, 2000). Appellants' personal disagreement with this regulation provides no basis for reversal.

3. The Modified Transition Area Calculation.

Entities and individuals are not permitted to engage in commercial development in transition areas, N.J.A.C. 7:7A-2.3(a)(3), without a transition

area waiver, N.J.A.C.7:7A-3.3(f). Jaylin's application included a TAW averaging plan governed by N.J.A.C. 7:7A-8.2. A TAW averaging plan "modifies the overall shape of a transition area without reducing its total square footage" and is permissible for regulated activities adjacent to exceptional resource value freshwater wetlands. N.J.A.C. 7:7A-8.2(a).

We disagree with appellant's argument that "DEP's issuance of the TAW frustrates and violates the FHACA and the FWPA" because DEP's contingent issuance, based upon the creation of a "modified" transition area, fails to adhere to the applicable regulations. They argue Jaylin's proposed modified transition area requires the alteration of the existing FHA and RZ, and, hence, "will not continue to serve functionally equivalent purposes of the original transition area and there will be a substantial net loss in protection of the wetlands on site."

Once more, appellants' argument sets forth their preferred regulatory requirements, rather than citing to existing regulations. A TAW authorizing the reduction of a transition area adjacent to an exceptional resource value wetland must be conditioned on an averaging plan that provides an average transition area width of at least 100 feet. N.J.A.C. 7:7A-8.1(g). DEP must also include additional protective conditions in a TAW to ensure the proposed activity "does not result in a substantial impact on the adjacent wetlands and does not impair

16

the purposes and functions of transition areas," if necessary. N.J.A.C. 7:7A-8.1(b). Outside of these general requirements, a TAW averaging plan may modify the shape of the transition area as long as it does not reduce the area's total square footage. N.J.A.C. 7:7A-8.2(a). Appellants assert DEP should be precluded from approving a modified transition area which takes from the FHA or RZ but there is no regulatory requirement to account for FHAs or RZs when approving TAW averaging plans. Nor do appellants provide any evidence to support their claim that the approved TAW will cause a "net loss of significant protections" or "commensurate benefit" to the areas at issue. Moreover, if the modified transition area in the averaging plan "will continue to serve the purposes of a transition area as set forth in N.J.A.C. 7:7A-3.3," then DEP is required to issue a TAW, barring four exceptions not relevant here. Appellants fail to show how the modified transition area will not continue to serve the purpose of a transition area. Therefore, the record supports DEP's grant of the TAW to Jaylin.

    4.    <u>The Pinelands Commission Plan.</u>

Lastly, appellants contend DEP arbitrarily failed to concur with the Commission and reject Jaylin's application. Appellants cite the Commission's memorandum, which opined Jaylin's proposed development is inconsistent with

A-3464-21

the CMP. According to appellants, DEP's single-sentence explanation for its disagreement is inadequate and is predicated upon DEP's failure to respond to the Commission's previous memoranda on the matter. They claim we are constrained to remand the matter to DEP for an administrative adjudication of this issue.

We previously addressed this issue in appellant's 2014 appeal. There, we concluded "[t]here [was] nothing in the MOA, statutes or regulations . . . requiring that DEP agree with the Commission's findings on any one application."

In the February 1988 Memorandum of Agreement with DEP, the Commission agreed that projects within the Pinelands National Reserve (PNR) and Coastal Zone are subject to DEP's authority. The PNR is an approximately 1,000,000-acre area encompassing much of southern New Jersey. N.J.A.C. 7:7-9.42(a). The "Pinelands Area" is a smaller subset of the PNR. Ibid. The Commission exercises direct regulatory authority over the state-designated Pinelands Area. Jaylin's proposed development is outside of the Pinelands Area, but inside the PNR and inside the coastal zone subject to CAFRA. Thus, DEP has the authority to issue the permits even if the Commission objects. DEP is required only to review the Commission's comments on development

18

applications within the PNR, which it did.  There is nothing inherently erroneous, let alone arbitrary, about DEP's disagreement with the Commission.

In sum, there is substantial, credible evidence DEP comported with applicable regulations and did not act arbitrarily or capriciously in reauthorizing the CAFRA Individual Permit and Freshwater Transition Area Waiver to Jaylin. We conclude there is no basis to vacate the permit or wavier.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3464-21