**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0699-23

WEDGEWOOD GARDENS
CONDOMINIUM ASSOCIATION,
INC., in its individual capacity,
and on behalf of its members,

     Plaintiff-Appellant,

v.

WEDGEWOOD GARDENS
DEVELOPERS, INC., ZYGMUNT
WILF, and LEONARD A. WILF,

     Defendants-Respondents.

_____

Argued November 19, 2024 – Decided February 5, 2025

Before Judges Perez Friscia and Bergman.

On appeal from the Superior Court of New Jersey, Law Division, Essex County, Docket No. L-2132-22.

Daniel W. Heinkel (Heinkel Law LLC) argued the cause for appellant.

Mark A. Rothberg argued the cause for respondents (Wilf Law Firm, LLP, attorneys; Mark A. Rothberg, on the brief).

PER CURIAM

This appeal addresses claims arising from a dispute over the title to a residential unit in a 136-unit condominium complex and whether it could be leased and sold like other residential units or whether it was required under the master deed to be treated as part of the common elements of the condominium, reserved for use by building personnel. Plaintiff Wedgewood Gardens Condominium Association, LLC (Association), in its individual capacity and on behalf of its members, appeals from a trial court order granting summary judgment to defendants Wedgewood Gardens Developers, Inc. (WGD), Zygmunt Wilf and Leonard Wilf (collectively Wilf defendants) and dismissing their claims with prejudice. After our review of the record and pertinent legal principles, we affirm.

I.

The Wedgewood Gardens Condominium (condominium) is a residential condominium in Verona. On June 29, 1983, WGD established the condominium by recording a master deed with the Essex County Register of Deeds. The master deed stated the property contained 136 units, including unit 74, the subject of this appeal, and that all units collectively own the "common elements" and bear the "common expenses."

A-0699-23

The deed further stated that a Board of Trustees (Board) shall govern the affairs of the Association. Pursuant to the terms of the master deed, the Board was initially controlled by WGD and was comprised of non-residents, but control of the Association was later conveyed to elected unit owners once the percentage of owners was met pursuant to the master deed.

Association leased unit 74 from WGD from 1983 to 1987 to house its building superintendent. The master deed provided WGD had authority to enter into the lease agreement with the Association from 1983 to 1987 because, as developers, they maintained control of the Association since the unit owners had not yet taken control of it under the terms of the master deed. In July 1988, the unit owners obtained a sufficient percentage of ownership as required by the master deed and gained control of the Association through the election of member residents to serve on the Board. Thereafter, Association continued to rent unit 74 from WGD. The lease was renewed on a yearly basis from in or about July 1988 until 2015. The parties agree the condominium's superintendent lived in unit 74 from 1983 until 2015.

Relevant to this appeal, paragraph 8(e) of the master deed states:

> [t]he Board shall designate at least one but not more than three unsold Units for use by building personnel. Said Unit or Units shall be considered part of the Common Areas and shall be maintained by the

Association and shall be part of the Common Expense. By the affirmative vote of not less than three-fourths of the votes of Unit Owners present at a meeting duly called for that purpose, the Association may elect to purchase one or more Units or other residential quarters for building personnel.

In November 2015, WGD mailed Association notice to terminate its lease because it was selling unit 74. The notice included an option for Association to purchase unit 74 pursuant to paragraph 8(e). On November 24, Association's counsel notified WGD that Association intended to purchase unit 74 and would "keep [WGD] posted as to the vote of the unit owners as per [paragraph] 8(e) of the [m]aster [d]eed." That same year at the December Board meeting, the purchase was approved by eighty-one percent of unit owners in attendance.

In February 2016, Association and WGD executed a contract of sale for unit 74. In April 2016, WGD executed the "deed for a condominium unit" in consideration of $199,000. At the closing, the Wilf defendants signed an affidavit of title attesting that no other persons had a legal claim to ownership of unit 74. Old Republic National Title Insurance Company certified and insured that WGD possessed good title to unit 74.

Approximately six years later, in April 2022, Association filed a six-count complaint against defendants alleging: (1) WGD violated the New Jersey Consumer Fraud Act (CFA), N.J.S.A. 56:8-1 to -228, by misrepresenting its

A-0699-23

quality of title to unit 74 during the sale; (2) WGD violated the CFA by leasing unit 74 without marketable title; (3) WGD breached the contract of sale by not possessing good title; (4) Wilf defendants violated the CFA by mispresenting the quality of title for unit 74; (5) a breach of fiduciary duty claim against all defendants for the leasing and selling of unit 74; and (6) a claim for equitable relief through the reformation of the condominium's master deed to reflect unit 74's status as a "common element."

After discovery was completed, Association moved for partial summary judgment and defendants cross-moved for summary judgment. The trial court denied Association's motion and granted defendants' cross-motion.

In its oral decision, the trial court found:

> Clearly,. . . 8E, the paragraph that [c]ounsel has been referring to, that the [c]ourt's referred to as well, allows for this particular issue. And therefore, the –in this [c]ourt's opinion, marketable title was able to be delivered in this particular case. And therefore, I don't find . . . there was a fraud here. Certainly, as the individuals acting on behalf of the Board. There's no piercing of the corporate veil here. That certainly is out. Consumer fraud as to the [d]evelopers, I said I don't find that. I don't find punitive damage to be appropriate here by breach of a fiduciary duty because I don't think there was a breach, based upon . . . the deed.

A-0699-23

The court also addressed Association's requested equitable relief for reformation finding:

> I'm not reforming the deed because I don't think it needs to be reformed. I think, and in fact – if there was going to be a question here, the . . . portion dealing between the parties clearly indicates, as a matter of equity, that in fact, they . . . understood what the process was. And they understood what the . . . who owned what and what was conveyed. So, I don't . . . find that reformation is appropriate here.

The court entered an order dismissing Association's claims with prejudice. This appeal followed.

II.

On appeal, Association argues the trial court erred by granting summary judgment to defendants and by denying its motion for partial summary judgment. Association makes several arguments addressing the trial court's inappropriate dismissal of each count of its complaint. Concerning the dismissal of count one, Association asserts the court incorrectly concluded the master deed at Section 8(e) authorized WGD to sell unit 74 because it was owned by Association as a common element and WGD violated the CFA by misrepresenting it had ownership and valid title to the unit. Association reiterates the same basis concerning the court's dismissal of counts three and five of its complaint.

Association further asserts the court's dismissal of count two should be reversed because it failed to adequately explain its basis for dismissal. Association argues the court's dismissal of count four should be reversed because liability can be imposed upon the individual defendants without having to "pierce the corporate veil." Association asserts dismissal of count six should be reversed because the court's finding that Association slept on its rights for thirty-five years is contrary to the substantial evidence in the record.

III.

We review a "trial court's summary judgment order de novo." Templo Fuente De Vida Corp. v. Nat'l Union Fire Ins. Co., 224 N.J. 189, 199 (2016) (citing Mem'l Props., LLC v. Zurich Am. Ins. Co., 210 N.J. 512, 524 (2012)). Accordingly, the trial court's analysis is not entitled to any special deference. Manalapan Realty, LP v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

We "appl[y] the same standards as the trial court when reviewing an appeal of an order granting summary judgment." Walker v. Atl. Chrysler Plymouth, 216 N.J. Super. 255, 258 (App. Div. 1987). Summary judgment should be granted when the pleadings and discovery show "that there is no genuine issue as to any material fact challenged and that the moving party is entitled to a judgment or order as a matter of law." R. 4:46-2(c). A genuine

7

issue of material fact exists when the discovery materials, "viewed in the light most favorable to the non-moving party, are sufficient to permit a rational factfinder to resolve the alleged disputed issue in favor of the non-moving party." Brill v. Guardian Life Ins. Co., 142 N.J. 520, 540 (1995).

A party offering no substantial or material facts in opposition to the motion cannot complain if the court takes as true the uncontradicted facts in the movant's papers. See Judson v. People's Bank & Tr. Co. of Westfield, 17 N.J. 67, 75 (1954); R. 4:46-5.

IV.

Given that Association's arguments primarily rely on the master deed to support its claims that unit 74 was a common element and therefore WGD did not own nor have good title to the unit during the lease period and at the time of sale, we first address the legal principles concerning this category of deed. The rights and responsibilities of a condominium-unit owner and a governing association are controlled by the master deed, the bylaws, and the New Jersey Condominium Act, N.J.S.A. 46:8B-1 to -38. Cape May Harbor Vill. & Yacht Club Ass'n, v. Sbraga, 421 N.J. Super. 56, 70 (App. Div. 2011).

The principles regarding construction of legal documents such as a master deed are well settled. When interpreting a written document, a court's goal is to

A-0699-23

ascertain "'the intention of the parties . . . as revealed by the language used . . . the attendant circumstances, and the objects'" sought to be attained. Onderdonk v. Presbyterian Homes of N.J., 85 N.J. 171, 184 (1981) (quoting Atl. N. Airlines, Inc. v. Schwimmer, 12 N.J. 293, 301 (1953)). The interpretation of the terms is to be "decided by the court as a matter of law unless the meaning is both unclear and dependent on conflicting testimony." Bosshard v. Hackensack Univ. Med. Ctr., 345 N.J. Super. 78, 92 (App. Div. 2001). These same principles are equally applicable to the construction of deeds. See Hofer v. Carino, 4 N.J. 244, 250 (1950).

The Condominium Act defines a condominium as "the form of ownership of real property under a master deed providing for ownership by one or more owners of units of improvements together with an undivided interest in common elements appurtenant to each such unit." N.J.S.A. 46:8B-3(h). "The association provided for by the master deed shall be responsible for the administration and management of the condominium and condominium property, including but not limited to the conduct of all activities of common interest to the unit owners." N.J.S.A. 46:8B-12.

Here, the master deed defines "common elements" as:

> all portions of the Property except the "Apartment Units" and "Garages" including, without limitation, the

9

land, foundation, walls, hallways, stairways, entrances and exits, parking areas and driveways, laundry rooms, mechanical equipment areas, boilers, roof, master television antenna, pipes, ducts, electrical wiring and conduits, central heating systems, public utility lines, and structural parts of the Building.

"Common expenses" are defined as "the proposed or actual expenses for which the Unit Owners are proportionately liable, including reserves and expenses declared to be common by [Association], any and all expenses of maintaining, repairing, replacing, administering the Common Elements, and those expenses incurred by [Association] or their respective . . . employees."

Section 8(e) of the master deed states that one to three unsold units shall be designated for use by building personnel. It further states "[w]ith an affirmative vote of not less than three-fourths of the votes of [u]nit [o]wners present at a meeting duly called," Association "may elect to purchase one or more units or other residential quarters for building personnel." The master deed continues "[s]aid Unit or Units shall be considered part of the Common Areas and shall be maintained by [Association] and shall be part of the Common Expense."

Here, both Association and defendants agree that unit 74 has been occupied by the building's superintendent for residential purposes since the creation of the condominium in 1983. At that time, unit 74 was listed along with

the other 135 units and was given an eighty-one percent "interest in common elements." Association agrees it has leased unit 74 from defendant from 1983 to 2015.

While Association contends unit 74 is deemed a "common element" which renders it as collectively owned by Association, we are unpersuaded. We determine Association's claim that unit 74 is a common element and, as such, is owned outright by Association would summarily invalidate WGD's title and ownership of the unit at the time the condominium was created without consideration. We note, WGD which was named the "sponsor" in the master deed, owned unit 74 because as the sponsor it "own[ed] any of the Units . . . until each Unit is sold, and it is occupied by the purchaser thereof" pursuant to paragraph 8(f) of the master deed.

Paragraph 8(e) states Association may elect to utilize up to one but not more than three unsold Units for use by building personnel and that the unit(s) shall be considered part of the "Common areas and shall be maintained by the Association and shall be part of the Common Expense." The common expense includes "actual expenses for which Unit Owners are proportionally liable, including . . . expenses declared to be common by [Association]." Yet, it is undisputed that WGD paid common area maintenance charges and property

11

taxes like any other unit owner during the approximate thirty-two-year period it was leasing unit 74 to Association.

Therefore, we conclude despite Association's argument that unit 74 was required to be designated as a common element by the master deed, it was never treated as such. We note Association has not denied WGD paid all common expenses and property taxes for the unit during the lease period. As a result, we determine WGD was permitted to lease the property to Association from 1983 to 2015 under the terms of the master deed and by operation of the parties during those years.

A.

We now apply the above legal determinations to Association's specific claims on appeal because their assertion that WGD did not possess ownership or title to unit 74 was the root basis supporting all counts of its complaint. We first address Association's claims under the CFA as against WGD at counts one and two of its complaint based on its leasing and sale of unit 74 to the Association. We also address the CFA claims against the Wilf defendants at count four related to their representation of ownership and good title on behalf of WGD at the time of its sale of unit 74 to Association.

A-0699-23

Association asserts since unit 74 was a "common element," the unit owners have a special interest in the property so it "cannot be sold like other property" nor could it be leased. By selling unit 74 to Association, defendant "misrepresented its ability to convey marketable title" and thus violated the CFA.

Defendants contend the trial court properly "concluded the 1983 [m]aster [d]eed specifically authorized [defendant] to sell [u]nit 74 to [Association], pursuant to the express language in the 1983 [m]aster [d]eed." "[T]he [m]aster [d]eed explicitly contemplated the sale of one or more units at the Association's election for building personnel, which shall be part of the Common Areas." As a result, the sale did not violate the CFA.

To prevail on a CFA claim, "a plaintiff must establish three elements: '1) unlawful conduct by defendant; 2) an ascertainable loss by plaintiff; and 3) a causal relationship between the unlawful conduct and the ascertainable loss.'" Zaman v. Felton, 219 N.J. 199, 222 (2014) (quoting Bosland v. Warnock Dodge, Inc., 197 N.J. 543, 557 (2009)). "Unlawful practices fall into three general categories: affirmative acts, knowing omissions, and violations of regulations promulgated pursuant to the statute." Heyert v. Taddese, 431 N.J. Super. 388, 412 (App. Div. 2013).

A-0699-23

The CFA makes the following acts unlawful, in connection with the sale or advertisement of real estate:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise or real estate, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby is declared to be an unlawful practice.
>
> [N.J.S.A. 56:8-2.]

Here, we determine there is no genuine issue of material fact that WGD owned unit 74 from the inception date of the condominium at the time the master deed was filed in 1983. No genuine factual issues were presented showing defendant did not continuously own unit 74 after the creation of the condominium until its sale in 2016 or that it did not pay all common area maintenance charges and property taxes for the unit during this time period. We conclude no material fact issues exist that WGD leased and sold the unit to Association in accordance with the parties interpretation of paragraph 8(e) of the master deed.

14

We further conclude defendant did not commit any unlawful conduct under the CFA by the leasing and sale of the unit because WGD owned the unit, and their actions were permitted by the master deed. Additionally, a plain reading of the master deed shows that Association never obtained ownership rights to unit 74 nor to the common elements they claim are associated with this unit merely because of its alleged designation as a common element in the master deed. WGD'S payment of common area maintenance charges and property taxes during the entire lease term proves otherwise. The record does not support that the sponsor, WGD, which clearly owned unit 74 at the time of the creation of the condominium complex, lost title to the property to Association without any payment of consideration and merely by its master deed designation as a common element.

We further determine the Wilf defendants—by their attestations to WGD's ownership and title to unit 74 in the affidavit of title—did not commit any unlawful conduct under the CFA since they were the representatives of WGD authorized to make these attestations to sell the unit. Association's contortions of the plain language of the master deed in its attempt to prove by designating unit 74 as a common element that this somehow transferred ownership to it does not persuade us otherwise.

15

We now turn to Association's claim that the court erred by granting summary judgment to defendants and dismissing count three of its complaint for breach of the contract of sale of unit 74. Association bases this claim on its repeated assertion that WGD did not own or possess marketable title to unit 74 when it sold the unit to it and therefore breached the contract of sale. A cause of action exists for breach of contract when the plaintiff can demonstrate that there exists "a valid contract, defective performance by the defendant, and resulting damages." Coyle v. Englander's, 199 N.J. Super. 212, 223 (App. Div. 1985). The construction of contract terms and whether the manner in which they were executed constitutes a breach is an issue of fact best left for the trier of fact. See Great Atl. & Pac. Tea Co. v. Checchio, 335 N.J. Super. 495, 502 (App. Div. 2000).

We have previously determined Association failed to show genuine issues of material fact existed related to defendants' claimed ownership of unit 74, therefore the trial court's grant of summary judgment as to count three of Association's complaint relying on these same factual and legal arguments was appropriate.

## C.

We now address Association's contention at count five of its complaint that both defendants—WGD and the Wilf defendants—breached their fiduciary duty by leasing and selling unit 74 without marketable title. Association reiterates its argument that the trial court's "[d]ismissal is inappropriate because it is based upon the trial court's incorrect conclusion that paragraph 8(e) authorized the sale of unit 74."

> Under New Jersey law, in order to establish a claim for breach of fiduciary duty, a plaintiff must show that: (1) the defendant had a duty to the plaintiff; (2) the duty was breached; (3) injury to the plaintiff occurred as a result of the breach; and (4) the defendant caused that injury.
>
> [Namerow v. PediatriCare Assocs., LLC, 461 N.J. Super. 133, 146 (Ch. Div. 2018).]

Again, because we have concluded WGD possessed ownership and clear title to unit 74 and the master deed authorized it to lease and sell the unit after the condominium transitioned from WGD to the Association, no genuine issues of material fact existed that defendants breached any fiduciary duty owed to Association.

Based on the above determination—that defendants possessed ownership and clear title to unit 74 at all relevant times—we conclude Association's

17

complaint at count six for reformation of the master deed also holds no merit. We also note, because Association owns unit 74 at this time, reformation may hold no purpose and, even if a purpose existed, the master deed can be amended by "the affirmative vote of the Unit Owners representing 75% of the undivided interest in the Common Elements" pursuant to paragraph 22 therein.

To the extent we have not addressed any of Association's remaining arguments, we conclude those arguments are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

18