# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1346-24

IN THE MATTER OF THE
CIVIL COMMITMENT OF
L.R., SVP-700-14.

_____

Submitted November 6, 2025 – Decided January 21, 2026

Before Judges Paganelli and Jacobs.

On appeal from the Superior Court of New Jersey, Law Division, Passaic County, Docket No. SVP-700-14.

Jennifer N. Sellitti, Public Defender, attorney for appellant L.R. (Michael Denny, Assistant Deputy Public Defender, of counsel and on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent State of New Jersey (Sookie Bae-Park, Assistant Attorney General, of counsel; Stephen Slocum, Deputy Attorney General, on the briefs).

Appellant filed a supplemental brief on appellant's behalf.

PER CURIAM

L.R. appeals from a December 2, 2024 order continuing his civil commitment pursuant to the Sexually Violent Predator Act (SVPA), N.J.S.A.

30:4-27.24 to -27.38.[1] He contends the trial court erred in finding the State established by clear and convincing evidence that he suffers from a qualifying mental abnormality or personality disorder and is highly likely to sexually reoffend if released. We affirm substantially for the reasons contained in Judge Imre Karaszegi's thorough, well-reasoned oral opinion.

## I.

In 1997, a jury found L.R. guilty of burglary and attempted aggravated sexual contact after he entered a woman's home and climbed atop of her while she slept. In 2009, L.R. broke into the residence of a twelve-year-old girl and sexually assaulted her. Later that same day, he entered the bedroom of an adult woman and was found masturbating. L.R. pleaded guilty to burglary and sexual assault and was sentenced to concurrent five- and six-year prison terms respectively, subject upon release to Megan's Law registration, N.J.S.A. 2C:7-1 to -23, and parole supervision for life, N.J.S.A. 2C:43-6.4.

Pursuant to the SVPA, L.R. has been confined at the Special Treatment Unit (STU) since September 2014. Following completion of his sentence in

---

[1] We use initials for appellant to protect his privacy and the confidentiality of the record. R. 1:38-3(f)(2).

A-1346-24

2014, L.R. was civilly committed to the STU. Since then, he has undergone annual review hearings as required by the SVPA.

At the 2024 annual review hearing, the State presented expert testimony from Dr. Fatima Masumova, a psychiatrist, and Dr. Nicole Paolillo, a psychologist. Both experts conducted interviews and reviewed L.R.'s criminal and institutional records. Dr. Masumova conducted actuarial risk assessments using the Static-99R and Stable-2007 tests.[2] The two scores combined "support a well above-average risk for sexual re[-]offense."

Psychologists from the STU's Treatment Progress Review Committee also diagnosed L.R. with "Other Specified Personality Disorder[ with] Antisocial and Paranoid features," as well as alcohol, cannabis, and cocaine substance use disorders.

The State's experts agreed that L.R. remained in the first phase of treatment at the STU due to his refusal to engage in treatment for his disorders

---

[2] The Static-99R is an actuarial risk prediction assessment designed to estimate the probability of sexual re-offense, while the Stable 2007 is an actuarial instrument designed to assess dynamic risk factors associated with sexual recidivism and the level of supervision needed if an individual was released. See Kevin Baldwin, Sex Offender Risk Assessment, Sex Offender Mgmt. Assessment and Plan. Initiative 3-4 (July 2015).

A-1346-24

since June 2016. Counsel for L.R. cross-examined the State's witnesses but did not call any witnesses on his own behalf.

The trial court found the experts' testimony credible. In a comprehensive review and assessment of the record, Judge Karaszegi determined the State met its burden under the SVPA and ordered the continued civil commitment of L.R.

On appeal, L.R. argues the State failed to present clear and convincing evidence that he meets the criteria for continued commitment. He contends the experts improperly relied on hearsay and "decades[-]old police reports." He further disputes the sufficiency and relevance of evidence regarding mental abnormality, substance use disorders, and alleged risk to reoffend. Finally, L.R. maintains "his current supervision needs are only moderate," his substance use disorders are in remission, and he completed preparatory modules, making continued confinement unjustified.

## II.

Our scope of "review of a commitment determination is extremely narrow." In re D.C., 146 N.J. 31, 58 (1996) (citing State v. Fields, 77 N.J. 282, 311 (1978); In re Commitment of J.L.J., 196 N.J. Super. 34, 49 (App. Div. 1984)). Judges in such cases generally are "specialists" in SVPA matters and due to "their expertise in the subject," their findings are "entitled to 'special

deference.'" In re Civil Commitment of R.F., 217 N.J. 152, 173 (2014) (quoting In re Civil Commitment of T.J.N., 390 N.J. Super. 218, 226 (App. Div. 2007)). "Deference to these factual findings is required because those findings 'are substantially influenced by [an] opportunity to hear and see the witnesses and to have the "feel" of the case, which a reviewing court cannot enjoy.'" State v. Gamble, 218 N.J. 412, 424-25 (2014) (alteration in original) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). We "reverse only when the trial court's determination is so clearly mistaken that the interests of justice demand intervention and correction." Id. at 425 (internal quotation marks omitted) (quoting State v. Elders, 192 N.J. 224, 244 (2007)). We do not reweigh the evidence, but ask "whether there is 'substantial, credible evidence to support the [trial] court's findings.'" Zaman v. Felton, 219 N.J. 199, 215 (2014) (quoting In re Civil Commitment of J.M.B., 197 N.J. 563, 597 (2009)).

Under the SVPA, the State may involuntarily commit "a person who has been convicted . . . of a sexually violent offense" and who "suffers from a mental abnormality or personality disorder that makes the person likely to engage in acts of sexual violence if not confined in a secure facility for control, care and treatment." N.J.S.A. 30:4-27.26. The State has the burden to establish three elements by clear and convincing evidence: (1) "that the individual has been

5

convicted of a sexually violent offense"; (2) "that he suffers from a mental abnormality or personality disorder"; and (3) "that as a result of his psychiatric abnormality or disorder, 'it is highly likely that the individual will not control his or her sexually violent behavior and will re[-]offend.'" R.F., 217 N.J. at 173 (first citing N.J.S.A. 30:4-27.26; and then quoting In re Commitment of W.Z., 173 N.J. 109, 130 (2002)). "Although the first two elements derive directly from the statute, to comport with substantive due process concerns, [our Supreme] Court [has] interpreted the third statutory element as requiring the State to show that a person is 'highly likely,' not just 'likely,' to sexually reoffend." Ibid. (quoting W.Z., 173 N.J. at 130).

"A person committed under the SVPA 'shall be afforded an annual court review hearing of the need for involuntary commitment as a sexually violent predator.'" Matter of P.D., 243 N.J. 553, 565 (2020) (quoting N.J.S.A. 30:4-27.35). "The annual review hearing, like the initial hearing, is conducted in accordance with" the SVPA's statutory requirements. Ibid.

On appeal, L.R. contests only the second and third elements. Regarding the second element—whether appellant suffers from a mental abnormality or personality disorder—the record reflects Dr. Masumova and Dr. Paolillo independently diagnosed appellant with a qualifying personality disorder

6

characterized by antisocial features. Based on interviews and record reviews, both experts testified L.R. has exhibited poor problem solving, impulsivity, and negative emotionality. Both experts testified these traits persist and have not been addressed due to L.R.'s refusal to meaningfully participate in treatment. Both experts utilized generally accepted risk assessment instruments. L.R.'s conduct, specifically, his attendance at only superficial programs, withdrawal from substance abuse modules, and treatment refusal status, demonstrates a lack of risk mitigation. Their findings are supported by detailed treatment and vocational records in the record.

Judge Karaszegi appropriately admitted expert opinions as grounded in sources routinely relied upon based on an accepted methodology implemented by professionals in the field, consistent with N.J.R.E. 702. See State v. Olenowski, 255 N.J. 529, 616 (2023). Appellant's hearsay challenges are without merit, as the judge explicitly considered these materials only for assessing the basis of expert opinions and not for the truth of any underlying assertions. The judge observed Dr. Masumova and Dr. Paolillo's conclusions were rooted in their own observations of L.R., not hearsay. Even if based on hearsay, their findings and conclusions are still permissible. See State v. Torres, 183 N.J. 554, 576 (2005) ("Although the out-of-court statements upon which

7

expert witnesses rely may be characterized as hearsay, our rules of evidence permit an expert to rely on hearsay if that hearsay is of the type 'reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject.'") (quoting N.J.R.E. 703).

Regarding the third element—that as a result of his psychiatric abnormality or disorder, it is highly likely the individual will not control his sexually violent behavior and will re-offend—the judge found L.R. suffers from a mental abnormality affecting his volitional, emotional, and cognitive capacities, and that he is highly likely to re-offend absent confinement. That finding is amply supported by the record. The experts' risk assessment scores were appropriately contextualized, with the judge finding the Static-99R score was "well above-average" and the Stable-2007 score, while "moderate," noted the presence of other risk factors present. The judge was not required to base his decision solely on actuarial tools, but could and did consider the totality of the evidence.

We are satisfied Judge Karaszegi's order continuing L.R.'s civil commitment pursuant to the SVPA is supported by substantial, credible evidence. The record clearly demonstrates L.R. suffers from a qualifying mental

A-1346-24

abnormality, rendering him highly likely to sexually re-offend if not confined to a secure facility.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

A-1346-24